### 4277. WILLIS v. CENTRAL OF GEORGIA RAILWAY CO.

This case is controlled by the decisions of the Supreme Court in *Southwestern Railroad* v. *Hankerson*, 61 *Ga.* 115, and *Moore* v. *Southern Railway Co.*, 136 *Ga.* 872 (72 S. E. 403), and is distinguishable from the case of *Central Railway Co.* v. *Pelfry*, ante, 119 (74 S. E. 854). The court did not err in directing a verdict in favor of the defendant.

DECIDED OCTOBER 9, 1912. REHEARING DENIED OCTOBER 22, 1912.

Action for damages; from city court of Savannah—Judge Davis Freeman. March 27, 1912.

*Osborne & Lawrence*, for plaintiff. *H. W. Johnson*, for defendant.

POTTLE, J. The plaintiff in error sued the railway company for the homicide of her husband, and excepts to the direction of a verdict in the defendant's favor. The undisputed evidence shows that the deceased, while in a drunken condition, lay or fell down by the side of the defendant's track in the nighttime and was struck by the pilot on an engine and killed. The case turns upon the testimony of the engineer, who was the only eye-witness to the killing, and whose testimony on material points is undisputed. The point for determination may best be understood from the following quotation from the engineer's testimony: "This track out there is perfectly straight, a level track. After we passed Central Junction, I was looking ahead of my engine. At that time they were laying new rail between the C. & A. crossing and the junction, and there were lots of cross-ties and new iron lying to the side of the track, and I noticed something—as I thought a cross-tie—lying close to the track, I do not mean it was between the two rails. You understand, when they are putting in these new ties they run them up, throw them to the side of the ties, wherever they find a bad tie there, and when they come to it, they put it in, and I thought it was a tie that was lying there, and I got very close to it, I suppose 100 feet possibly, and I saw it raise up that way, and I slammed the brakes on before I shut the engine off, and I shut the steam off after the brakes were on. I did that for the simple fact that I did not have time after I discovered it was a man. That was the first time I discovered that it was a man. Had he have not moved or raised his head the engine would have gone by him without any danger; the train would have gone by him; he would not have been touched at all, but he raised up. He was not

between the rails, he was not on the track at all. He appeared to me as though his head must have been either at the end of a cross-tie or right between a cross-tie. The engine did not strike him; only the side of the pilot struck him, just the edge of the pilot struck him in the head, and I slammed the brake on. . . As to how close I was to him when he first raised his head up, I would say between 100 and 150 feet; I am satisfied it was not any more than that. I could not have stopped my train within the distance that I saw him without striking him, before my engine got to him, not when I discovered it was a man and he raised up."

The case is, in our opinion, absolutely controlled by the decisions of the Supreme Court in *Southwestern Railroad* v. *Hankerson,* 61 *Ga.* 115, and *Moore* v. *Southern Railway Co.,* 136 *Ga.* 872 (72 S. E. 403). In the *Hankerson* case, supra, it appeared that the engineer saw an object lying on the track, just beyond a crossing, which he took to be a hog that had been killed by a freight-train just ahead of him; when he got within 100 or 125 yards of this object he discovered that it was a man, lying between the rails with his head on a stringer close up to the rail, and his body and legs doubled up toward the next stringer and between them; that as soon as he saw this he put on his brakes, reversed his engine, and sounded the whistle; that from the time he discovered it was a man and not a dead hog, he did everything he possibly could have done to prevent the injury to the person lying on the track. The Supreme Court held: "If one voluntarily becomes drunk, and consequently falls down, or lies down, in a state of insensibility on a railroad track, so that he is injured by a passing train, he can not recover for injuries so received, even though there may have been contributory negligence on the part of employees of the road." In *Moore's* case, supra, the man injured was sitting upon the end of a cross-tie, in the nighttime. There was testimony that the engineer had stated, when at a distance of several hundred yards away, that he saw an object on the track, but thought it was a dog. It was held that a nonsuit was properly granted.

Counsel for the plaintiff contend that, inasmuch as there was testimony for the plaintiff that at the place where the deceased was killed the public had for many years been accustomed to use the track longitudinally as a walkway, it was a question for the jury whether or not the engineer should have been on the lookout for

persons on the track, and whether or not he exercised ordinary care and diligence. This evidence does not help the plaintiff's case, for two reasons. In the first place, it does not appear that the company knew of this use of its track by the public, or consented to it, either impliedly or expressly. For this reason, the principle announced in *Shaw* v. *Georgia Railroad,* 127 *Ga.* 8 (55 S. E. 960), has no application. In the second place, the undisputed evidence shows that the engineer was on the lookout, that he saw an object lying near the track which he honestly mistook for a cross-tie, and that after discovering that it was an animate object he did everything in his power to stop the train. Counsel insist that the case is controlled by the decision of this court in *Central Railway Co.* v. *Pelfry,* ante, 119 (74 S. E. 854); but there are at least three distinguishing features between that case and the present case. In the first place, in that case the engineer was in doubt as to what the object was. It was a suspicious object. He asked his fireman what it was, and the fireman replied that he did not know. He thereupon increased the speed of the train, and, instead of keeping his eyes fastened upon the track, he took them off and looked around again up the track when it was too late to stop the train after discovering that a man was lying prone upon the track. That case was decided upon its peculiar facts, and this court did not intend to hold (nor could it hold, in view of the decisions of the Supreme Court on the subject) that where an engineer honestly believes that an object upon or near the track is an inanimate object, and keeps on the lookout, and, as soon as he discovers that the object is a human being, does everything in his power to prevent injury to such person, the company would be liable. Indeed, in the very case relied upon by counsel for the plaintiff, the general rule is thus announced: "If a railway engineer sees a person lying on the track at some distance away, and honestly mistakes him for an inanimate object, failure to check the speed of the train or take other precautionary measures will not render the company liable." The present case was within the general rule as announced by the Supreme Court of this State, and not within the exception within which, on account of its peculiar facts, the *Pelfry* case was held to come. There was no error in directing a verdict in favor of the defendant.                    *Judgment affirmed.*

### ON MOTION FOR REHEARING.

In the motion for a rehearing counsel insist that there was such a conflict in the evidence, both in reference to the question whether the deceased was drunk and voluntarily went upon the track in this condition and the question whether the company knew of the prior use of the track as a footway, as to demand the submission to the jury of the question whether the deceased was guilty of such gross negligence as to prevent a recovery. For the purposes of this case it may be conceded that counsel have correctly apprehended the evidence and that the court was wrong in stating, in the original opinion, that the evidence was undisputed that the deceased, in a drunken condition, lay or fell down upon the track, and that there was no evidence that the company knew of the use of the track as a footway. Let it be conceded that the deceased was not drunk. It is utterly immaterial how he came to be upon the track, so long as the company's employees had nothing to do with his presence there and did not discover him in time to avoid killing him. Let it be admitted that the deceased was not at fault and that the company was bound to look out for him. His widow must recover, if at all, not because her husband was free from fault, but because the company was negligent. In what does the negligence consist? The engineer was on the lookout. He could not have been more diligent in this respect if he had anticipated the presence of the deceased. Surely counsel do not mean to contend that the train must creep along at all points on the track where pedestrians have, without the company's permission, previously used the track longitudinally as a footway. The engineer had his eyes open and his vision riveted upon the track. He saw what he thought was a cross-tie. He had no reason to suspect it was anything else. We can not agree, as counsel contend, that the jury could arbitrarily say the engineer had no right to assume the object was inanimate, but that, in the exercise of ordinary care, he could have known it was a man. He says he was honestly mistaken—that he used his eyesight and that he had no reason to believe the object was other than he first thought it to be. There is nothing to dispute this testimony. The company was not negligent, and the plaintiff was not entitled to recover even though her husband was wholly free from fault. Motion denied.