WESTERN AND ATLANTIC RAILROAD *v.* GRAY.

*Walton Whitwell, T. G. Head, Mitchell & Mitchell, W. A. Miller, Fitzgerald Hall,* and *Frank Slemons,* for plaintiff in error.

*McClure & McClure* and *Mann & Mann,* contra.

RUSSELL, C. J. ■ A motion was made to dismiss the writ of error, upon the ground that it appears from the record that the trial court adjourned prior to the filing of the motion for a new trial. Since the motion to dismiss was not made in accordance with the Civil Code of 1910, § 6250, which provides that such motion shall be made and opposing counsel notified at least twenty-four hours before the case is called for a hearing in this court, the motion must be overruled. The case was argued in this court on June 17, 1930, and no motion to dismiss was made until September 30, 1930. *King* v. *State,* 169 *Ga.* 15 (149 S. E. 650).

■ The first five special grounds of the motion for a new trial assign as error the admission in evidence, over timely objections of the defendant, of certain testimony of Mrs. Helen N. Gray, Allen Gray Jr., Mrs. M. A. Gray, W. R. Brown, and Clarence Brown, as to the use and maintenance of the railroad crossing where the husband of the plaintiff was killed. From this testimony it appeared that at one time the crossing was repaired under the supervision of a section man of the defendant company; and there was also testimony that the road crossing had been worked at various times for several years by the county convicts. From these circumstances it might be legitimately inferred that the road was and had been for several years a public road or a private way. In either event, under the provisions of the Civil Code of 1910, § 2673, it was a railroad crossing within the purview and meaning of the road laws of this State. The movant objected upon the grounds that if the road was worked by the county officers and county money expended, such acts would not be binding on the county so as to create this a public road and a public-road crossing by prescription, unless the road was registered in the road register book; that such evidence could only be admissible for the purpose of showing the creation of this road and crossing as a public road either by dedication or prescription; that to constitute this a public-road crossing by dedication would require an act of the General Assembly to give a right of way across

the right of way of the Western & Atlantic Railroad, the property of the State of Georgia; and that the crossing could not be established as a public-road crossing by prescription, because prescription can not run against the State. Under the provisions of the Civil Code of 1910, § 1289, "All the public-road laws and penal laws touching the railroads of this State, whether to obligate or protect, apply to the State road, unless specially excepted, or some other provision is prescribed in lieu of some one or more thereof." That section has been embodied in every Code of this State from the time of its adoption as § 890 of the Code of 1861. The preceding section, which was § 889 of the first Code, is as follows: "The State occupies the same relation to said road, as owner, that any company or incorporation does to its railroad, and the obligations of the State to the public concerning said road, and of the public to said road, are the same as govern the other railroads of this State, so far as is consistent with the sovereign attributes of this State, and the laws of force for its conduct." So it is not necessary, as contended by counsel for plaintiff in error, that a special act granting a right of way shall be passed by the General Assembly in any instance for the grant of a right of way for either a public road or a private way across the right of way of the Western & Atlantic Railroad. Section 2673 declares: "All railroad companies shall keep in good order, at their expense, the public roads or private ways established pursuant to law, where crossed by their several roads, and build suitable bridges and make proper excavations or embankments, according to the spirit of the road laws." Act of 1838, Cobb, 95. In *Central Railroad Co.* v. *Robertson, 95 Ga.* 430 (22 S. E. 551), the alleged injury was inflicted at a crossing "put there to accommodate the settlement." Chief Justice Simmons, in delivering the opinion of the court, said: "In view of these facts, it does not matter whether the crossing was one which the defendant was required by statute to keep in repair or not. Where a railroad company builds a crossing over its road and undertakes to keep it in repair for the accommodation of the public, this is equivalent to an invitation to the public to use the same; and if a person using the crossing sustains injury from defects negligently permitted to exist or remain in the crossing, the company will be liable in damages, independently of any statutory provision on the subject. The principle which governs in such cases has been stated thus:

'When the owner or occupier of land, by invitation express or implied, induces or leads others to come upon his premises for any lawful purpose, he is liable in damages to such persons for injuries occasioned by the unsafe condition of the land or its approaches, and under such an express or implied invitation he must exercise ordinary care and prudence to render the premises reasonably safe for the visit.' *Atlanta Cottonseed Oil Mills* v. *Coffey*, 80 *Ga.* 145 [4 S. E. 759, 12 Am. St. R. 244]. 'The gist of the liability consists in the fact that the person injured did not act merely for his own convenience and pleasure, and from motives to which no act or sign of the owner or occupant contributed, but that he entered the premises because he was led to believe that they were intended to be used by visitors or passengers, and that such use was not only acquiesced in by the owner or person in possession and control of the premises, but that it was in accordance with the intention and design with which the way or place was adapted and prepared or allowed to be so used. The true distinction is **this**: A mere passive acquiescence by an owner **or occupier in** a certain use of his land by others involves no liability; but if he directly or by implication induces persons to enter on and pass over his premises, he thereby assumes an obligation that they are in a safe condition, suitable for such use, and for a breach of this obligation he is liable in damages to a person injured thereby.' Sweeny *v.* Old Colony and Newport Railroad Company, 10 Allen (Mass.), 373 [87 Am. D. 644]." So it was not necessary to offer further evidence as to the establishment of this crossing where the accident occurred, and it was immaterial as to whether the crossing was part of a public road or of a private way. Likewise it is immaterial what was the exact method employed in the original establishment of the crossing. The rule that no prescription runs against the State has no application. Civil Code of 1910, §§ 1288-1289.

■ In the sixth ground of the motion for a new trial the movant complains that it was error for the court to charge the jury in the language of § 2673, which we have heretofore quoted. This instruction was applicable to the evidence, without regard to the method in which the crossing originated; and under the ruling in *Central Railroad Co.* v. *Robertson*, supra, even if it had not been established in any of the ways prescribed by law but the circum-

stances of its maintenance were such as to imply an invitation for passengers to use the crossing as a means of travel, the evidence of the witnesses Cunningham and Harris at least established the fact that this crossing crossed the railroad track, and had long been used as a matter of public and private accommodation. Cunningham testified that he did not know whether it was worked by the county authorities, and did not think it was; but he testified: "I am the oldest, I suppose, of any body that used that road, and they have been traveling that road since 1879." Harris testified: "It was not a regular main road, but there was a good deal of travel on it. Yes, sir, that was just a road, what you might call a neighborhood road, that just went in the neighborhood." The criticism that in charging § 2673, without any explanation, the court invaded the province of the jury, and in effect told them that this crossing was in fact a public crossing, is not sustained. The reading of § 2673 was a sufficient instruction as to the duty of the railroad in maintaining the crossing in question, and it was not necessary to instruct the jury as if there was a different duty devolving upon the railroad in case of a private road from that applicable in the event that the crossing was at a public highway. It is true that the defendant in its answer denied that the crossing was a public crossing. The plaintiff alleged that the crossing was a public crossing, but we have shown that the liability of the railroad for negligence would be the same were the proof clear that it was only a private crossing. So that, even if the instruction was error, the error was not material or harmful to the defendant.

■ In the seventh ground the movant insists that the court erred in failing to charge the jury what degree of care the defendant was required to exercise in maintaining the crossing if the jury should find that the road in question was neither a public road nor a private way established pursuant to law. The evidence referred to as requiring such instructions to be given is that of Bert Cunningham, B. F. Harris, Allen Gray Jr., and Mrs. Helen N. Gray. Harris testified: "Yes, sir, the hands that live there on the place worked it. It is not a regular main road, . . that was just a road what you might call a neighborhood road that just went in that neighborhood. Yes, sir, they did all the work on it that was ever done." Cunningham testified: "I don't know whether it was worked by the county authorities; I don't think it

was. I know I had to work the road then, and I did not work that road." Allen Gray Jr. and Mrs. Helen N. Gray testified that the deceased for several years maintained two gates across the road that led to the crossing where the accident occurred. Inasmuch as the evidence was undisputed that the deceased was killed by the defendant's locomotive and train, and at a crossing upon the right of way of the railroad company, and the defendant permitted whomever wished to cross whenever they pleased, the full measure of duty of the defendant as defined in § 2673 is not subject to criticism. Had this terse and expressive language been expanded, expounded, or elaborated, there might have been occasion to complain of grievous error. In our view of the matter § 2673 was applicable whether the crossing was on a public road or a private way or on neither.

■ In the eighth ground complaint is made that the court erred in failing to charge that if plaintiff's husband brought about his injury and death by his failure to exercise ordinary care for his own safety, plaintiff would not be entitled to recover. From an examination of the charge as a whole we think that this principle was clearly and distinctly given in charge to the jury. It is true that Mrs. Helen N. Gray testified that the deceased knew the condition that the crossing was in; he knew its location and surroundings. She testified that there was a bank, that you have to get your car on the railroad to see a southbound train, that you can drive up on the railroad and see a train coming before you get on the track. Sills testified that it was about twenty feet from the bank of the cut to the west rail of the railroad, from which point there was absolutely nothing to obstruct the view to the south of an approaching train at the curve, about three hundred yards from the curve to the crossing; and that one about nineteen feet away from the crossing, by merely looking to the south, could see an approaching train if it was between the crossing and the curve. Thomas Self Jr. testified that, seventy-five feet away from the crossing, the reflection of the lights and the approach of the train when it was seven or eight rail-lengths away could be seen and the train could be heard. Taking this evidence into consideration, the court properly charged the principle that the plaintiff could not recover if the deceased was not in the exercise of ordinary care for his own preservation at the time that he met his death.

■ In the ninth ground the movant complains because the court did not instruct the jury, as timely requested in writing: "The law imposed upon the deceased, in approaching and attempting to cross over the railroad-crossing, at the time and place alleged, the duty to exercise ordinary care for his own protection and safety. Ordinary care, as applied to him on said occasion, means such care as every prudent man would have exercised under the same or similar circumstances, and a failure on deceased's part to exercise such care on the occasion would constitute negligence on his part which would bar any recovery in this case." It is not cause for reversal to fail to give in charge all the substantive law to which the court's attention is directed by written request in the exact language of the request; and though the court did not use the same words as those employed in the requested instruction, he complied with the request by charging the jury: "I charge you that if you find the defendant or its employees were negligent in any of the particulars alleged in the petition of the plaintiff, and that such negligence was existing at the time the plaintiff's husband was killed, still the plaintiff could not recover if the deceased, Mr. Gray, in the exercise of that degree of care and caution which an ordinarily prudent person would have used, could have discovered the defendant's negligence, and, when he discovered it, by exercising a like degree of care and caution would have avoided the same. . . If there was anything present at the time of the injury which would cause an ordinarily prudent person to apprehend that there was a possibility, if not a probability, of an increased danger to him in doing the act which he was about to perform, then he must take such steps further as an ordinarily prudent man would take to ascertain if the danger really exists; and if he fails to do this, and is injured, no recovery will be allowed, if, by taking the proper precuations, he could have avoided the consequences of the negligence of the person or persons inflicting the injury."

■ In the tenth ground complaint is made that the court erred in refusing to give in charge to the jury the following language: "I charge you that the defendant has available four defenses, either of which, if proved by a preponderance of the proof, is a complete defense and bars any recovery. The defenses available are as follows: 1. That the defendant and its employees exercised all

ordinary and reasonable care and diligence to avoid the injury. 2. That the killing of the deceased was proximately caused by his own negligence. 3. That the deceased by the use of ordinary care and diligence on his part could and should have avoided the injury to himself. 4. That if both the deceased and the defendant company were negligent in causing the death of said deceased, the negligence of said deceased was equal to or greater than the negligence of the defendant and its employees. The court instructs the jury that if either of said four defenses is proved by a preponderance of the evidence, plaintiff would not be entitled to recover any damages of the defendant." The requested instruction is not an accurate statement of law, and in our opinion the assignment of error is without merit. In the charge of the court the jury were told that the defendant would not be liable if its employees used all ordinary and reasonable care and diligence to avoid the injury; that the defendant would not be liable if the killing of the deceased was proximately caused by his own negligence; that the plaintiff could not recover if by the use of ordinary care the deceased should have avoided the injury to himself; and that the plaintiff could not recover if both parties were negligent, unless the negligence of the deceased was less than the negligence of the defendant and its employees. It must be said that the instructions of the court in the charge to the jury were less argumentative than if (instead of charging general principles) the court had presented only matters which would be complete defenses and bar any recovery, with the almost immediate repetition and reference to the rules relating to defenses of the defendant company, by saying: "The court instructs the jury that if either of said four defenses is proven by a preponderance of the evidence, plaintiff would not be entitled to recover any damages of the defendant." Error is assigned in the eleventh ground on the refusal of the court to give to the jury the following charge: "If there were any obstructions to the sight or hearing of plaintiff's deceased in the direction of the approaching train, as the plaintiff's deceased neared the crossing, the obstructions required increased care on the part of the deceased on approaching the crossing. In such case, the care must be in proportion to the increase of the danger that may come from the use of the crossing at such a place." Conceding that there was an issue raised by the pleadings as to whether or

not there were obstructions along the embankment and south of the crossing, and conceding that the deceased knew of them, still, what degree of care or diligence should have been used by him in all the circumstances was a question for the jury alone. It is for the jury to determine what is the care of an ordinarily prudent man under any and all circumstances which may be presented by the evidence; and it is not within the province of the court to interfere in their ascertainment of the proper degree of care which may be commensurate with the circumstancs, by instructing them that the deceased should have used either a greater or a less degree of care than the standard raised by the jury itself as the proper definition of ordinary care under whatever they may find to be the circumstances in evidence in the particular case. For the court to tell the jury in any case that a plaintiff should use a greater degree of care in one instance, and a lesser degree of care in another instance, would be participation by the court in the ascertainment of the degree of diligence or negligence involved in the case as applicable to the plaintiff, when it is the exclusive prerogative of the jury to settle all questions of negligence and of comparative diligence, and to ascertain when, how, and to what degree any party is guilty of negligence, as well as whether such party is free from negligence.

■ The error assigned in the twelfth ground is that the court erred upon the recharge delivered after the jury had been out for some time considering the case, when the following occurred: The foreman of the jury said that he would like for the court to recharge the jury with "regard to that interest clause; there is some discussion about that." To this the court replied: "Very well. If you find for the plaintiff in this case, then you would ascertain from the evidence the number of years the plaintiff's husband might have been expected to live, then the average yearly amount that he would have received from his earnings, and then, multiplying the expectancy, that is, the number of years you might find he would reasonably have been expected to live, by the average yearly amount he would have received had he not been killed, and in this way you would ascertain the gross amount that he would have earned had he lived. You will not find this gross amount, but you would reduce it to its present cash value; that is, ascertain what sum paid in cash would be a just and legal cash equivalent

of this gross amount, taking into consideration the fact that money is worth seven per cent. per annum in this State. In other words, gentlemen, if you return a verdict for the plaintiff in this case, that would be a cash verdict, or a verdict arriving at what the plaintiff's husband's earnings would have been throughout his expectancy. But inasmuch as these earnings would have been made through the years throughout his expectancy, you would have to reduce the gross amount to its present cash value. In other words, gentlemen, for example, a hundred dollars or a thousand dollars to be earned ten or fifteen years from now is not worth as much as a hundred dollars or a thousand dollars earned this year; or I will state it another way: a hundred dollars or a thousand dollars in cash today is worth considerably more than a hundred dollars or a thousand dollars would be fifteen years from now, or ten years or eight years or seven years or any other period in the future. Is that what you wanted?" Foreman: "Yes, sir." Immediately thereafter the foreman asked the following question: "Are we just allowed to set a lump sum if we so desire?" The court answered: "Yes sir." The foreman then said: "That is all we wanted to know." Movant insists that the answer of the court that the jury was allowed to fix a lump sum as their verdict was error requiring the grant of a new trial. The movant construes the question of the foreman as being equivalent to asking the court whether the jury, if they so desired, could not just set a lump sum as the damages in this case, "and not be bothered with following the rules of calculations in reducing the value of the life of the deceased to its present cash value;" and movant insists that when the court told the jury, "Yes, sir," this was equivalent to the court saying "Yes, sir, you are allowed to just set a lump sum if you so desire." We do not so translate this colloquy. The inquiry of the foreman of the jury and the answer of the judge were really directed to the ascertainment on the part of the jury whether the total ultimate finding, after the jury had made the calculation which the court had dealt with, should be reported to the court in their verdict, or if the verdict should include a statement of the gross amount found by the jury and the amount deducted by the jury from this gross amount. In damage suits it is common practice for the trial court, after giving other instructions, specially in cases in which interest may be involved, to

tell the jury that the amount finally reached will be embodied as their verdict. For instance, interest may be allowed in some actions for damages, but the court will instruct the jury that after calculating the interest it will not be returned as a separate item, but they will include whatever is allowed for interest in the verdict containing their finding for damages.

■ In the thirteenth ground error is assigned in that the court, over timely objections, permitted the plaintiff to testify as to the number, names, and ages of her five children. We find no error in the admission of this evidence, inasmuch as the plaintiff did not attempt to show anything more than what has just been stated. In *Darby* v. *Moore,* 144 *Ga.* 758 (87 S. E. 1067), it was held: "On the trial of a suit brought by a widow to recover damages for the homicide of her husband, under sections 4424-4425 of the Civil Code of 1910, it was not error to permit her to testify that she had been twice married, and that at the time of the suit three minor children by the former marriage were living. The recovery, if any, in such case is for the benefit of the widow and minor children; and that being so, the testimony was not objectionable as irrelevant." The rule is different if, in addition to proof as to the number of children, any intimation of the financial condition or necessities of the plaintiff be suggested. See *Central of Ga. Ry. Co.* v. *Prior,* 142 *Ga.* 536 (83 S. E. 117); *M., D. & S. R. Co.* v. *Musgrove,* 145 *Ga.* 647 (89 S. E. 767).

■ It was not error to refuse the requests for instructions contained in grounds numbered 14-18. Circumstantial evidence was adduced which authorized the jury to infer the existence of the negligence alleged. The court charged that the burden was upon the plaintiff to prove the case as laid, by a preponderance of the evidence, and that this applied to each allegation of negligence. In this connection the court charged the usual rule that a fact may be proved by either direct or circumstantial evidence, and both kinds of evidence were correctly defined. The court was not required to instruct the jury that the allegations of negligence pointed out in the requests were withdrawn from the consideration of the jury because there was no evidence which would support these allegations. As to each allegation of negligence there was one or more circumstances from which the jury might infer the existence of the fact as alleged in the petition; and as this would be prima

facie proof, and the defendant introduced no testimony, the prima facie evidence, unexplained and unrebutted, might, under the principles stated in Mobile &c. Railroad v. Turnipseed, 219 U. S. 35 (31 Sup. Ct. 136, 55 L. ed. 78, 32 L. R. A. (N. S.) 226, Ann. Cas. 1912A, 463), and Western & Atlantic Railroad v. Henderson, 279 U. S. 639 (49 Sup. Ct. 445, 73 L. ed. 884), authorize a finding that the allegation of negligence was proved.

With reference to the assignments of error in the nineteenth and twentieth grounds, it is clear that the criticism that the jury were not given any correct rule for fixing the measure of damages is not sustained. The jury were told, after the court had instructed them as to their consideration of the evidence, earning capacity of the plaintiff's husband, and his probable expectancy, and that one might be multiplied by the other, that they must reduce the gross sum to its present cash value if they found for the plaintiff, using the legal rate of interest in this State as a basis. Continuing, the court said: "You will not find this gross amount, but would reduce it to its present cash value; that is, ascertain what sum paid in cash would be the just and legal cash equivalent of this gross amount." By way of illustration, the court said: "A hundred dollars or a thousand dollars to be earned ten or fifteen years from now is not worth as much as a hundred dollars or a thousand dollars earned this year; or I will state it another way: a hundred dollars or a thousand dollars in cash to-day is worth considerably more than a hundred dollars or a thousand dollars would be fifteen years from now, or ten years or eight years, or seven years or any other period in the future." We deem this to be a sufficient instruction as to the correct method for use in reducing a gross amount to its present cash value, which would enable the jury to accurately determine and estimate the present cash value of the gross sum. A method charged which the jury was authorized but not required to adopt was one which is fair and reasonable, and authorized by the evidence. It is alleged in these grounds of exception that the failure of the court to give the jury proper instructions as to the measure of damages deprived the defendant of due process of law as guaranteed by the fourteenth amendment to the constitution of the United States. It appears that under the evidence the plaintiff was authorized to receive a verdict for over $59,000 for loss of the services of her deceased

husband, if the value of his life be computed by a consideration of his expectancy as shown by the mortality tables and by the only proof of his annual earning capacity. It is insisted that by reason of the failure of the court to correctly instruct the jury as to the measure of damages, and specially in view of the fact that the action is one in which the plaintiff is entitled to recover the full value, without deduction for the necessary living expenses, of the life of plaintiff's husband up to the time he might have lived if he had not been killed, that the defendant company was deprived of due process of law; in other words, that the recovery of a penalty is permitted in addition to damages allowed as compensation for the result of defendant's negligence; and it is urged that the allowance of such penalty is not permissible in actions grounded upon mere negligence. This at least is the suggestion or implication arising from the statement that, no correct measure of damages being given, the defendant was injured as contended. It is clear to us that since the jury would have been authorized by the evidence to render a verdict in favor of the plaintiff for more than $59,000, and since the verdict was for only $10,000, the defendant has no reason to complain that it has been deprived of anything, or any of its property, for want of due process. The difference of $49,000 between what the jury found and what they might have found under the instruction given is a sum sufficiently large to have covered any deduction that could reasonably have been made for living expenses of the plaintiff's husband from the time he was killed until the extreme limit allotted to him as a reasonable expectancy under the evidence in the case, had they been instructed as contended for by the plaintiff in error. For this reason, we are of the opinion that the assignments of error complaining of the instructions given, dependent upon the allegation, in substance, that the defendant was deprived of due process as required by the fourteenth amendment to the constitution of the United States, in the light of the context and of the entire charge, are without merit. From this conclusion it follows that it is unnecessary at this time to determine whether sections 4424 and 4425 of the Civil Code of 1910 are unconstitutional. It is a fixed rule of jurisprudence that inquiry will not be made into the constitutionality of a statute involved in the proceeding before the court, if a decision of the merits can be reached without reference thereto. Upon this rule we forbear at this time to

adjudicate the constitutionality or unconstitutionality of the code sections to which we have referred.

Upon a careful consideration of the charge of the court as a whole, it is very evident that the trial judge (the same who tried the case of Western & Atlantic Railroad v. Henderson, 279 U. S. 639 (49 Sup. Ct. 445, 73 L. ed. 884), gave a most careful and obedient adherence, as he should have done, to the decision of our supreme judicatory. Subsequently to the ruling of the Supreme Court of the United States in the Henderson case, the General Assembly of Georgia in 1929 (Georgia Laws 1929, p. 315) passed an act in every material respect similar to that section of the Code of Mississippi which was construed by the United States Supreme Court in Mobile &c. Railroad v. Turnipseed, supra, where it was held that the provision as to a prima facie case was constitutional and not in derogation of the fourteenth amendment to the constitution of the United States. Although the cause of action in the insant case antedated the Georgia law of 1929, the trial sub judice occurred after its passage; and the rulings of the court as to the admissibility of evidence, and the instructions of the trial judge, were in accordance with the principles announced in the Turnipseed case. The defects referred to in the decision of the Supreme Court of the United States in the Henderson case were carefully avoided. No reference was made to the statutory presumption contained in the Code of 1910, § 2780, but the plaintiff was required to prove all of her allegations by a preponderance of the evidence. Evidence of circumstances which supported the plaintiff's several allegations of negligence was submitted, and the jury were told that they should not accept the circumstantial evidence as conclusive proof by deduction or inference, unless no other reasonable inference than that the defendant must have been negligent could be inferred from the circumstances in evidence. Under this drastic rule, which has not been generally applied in civil cases so far as we are aware, testimony was submitted to the jury. The fact that the amount of damages found by the jury was so much smaller in comparison to what they might have returned, even after making all deductions insisted upon by plaintiff in error, and is so much smaller than could have been found had the law contemplated that the deductions for necessary expenses of plaintiff's husband be made, constrains this court to conclude that the verdict was authorized.

■ In the twenty-third and twenty-fourth grounds it is insisted that it is a practice in the State of Georgia to expressly withdraw from the consideration of the jury any and all contentions of a plaintiff which are unsupported by evidence, except in suits for damages against railroads; and that for this reason the refusal of the court in this case to withdraw certain allegations made by the plaintiff, which counsel for the defendant in writing requested should be withdrawn, was a discrimination denounced by the due-process clause of the fourteenth amendment to the constitution of the United States. The court was not required to instruct the jury that the allegations of negligence pointed out in the requests were withdrawn from the consideration of the jury because there was no evidence which would support these allegations. As to each allegation of negligence there were one or more circumstances from which the jury might infer the existence of the fact alleged in the petition; and as this would be prima facie proof, and the defendant had introduced no testimony, the prima facie evidence, unexplained and unrebutted, might authorize a finding that the allegation of negligence was proved, under the principles stated in Mobile &c. Railroad v. Turnipseed, 219 U. S. 35, and Western & Atlantic Railroad v. Henderson, 279 U. S. 639. The requested instructions being, for the reasons just stated, properly refused, it can not be held to be a sufficient foundation upon which to base the exception that the refusal of the request was a violation of due process of law. We therefore hold that the attempt to raise that question in the lower court was ineffectual.

■ The last headnote requires no elaboration.

*Judgment affirmed. All the Justices concur.*
ATKINSON and GILBERT, JJ., concur in the result.