35705, 35827. GEORGIA SOUTHERN & FLORIDA RAILWAY COMPANY *v.* WILSON; and *vice versa.*

Decided October 18, 1955—Rehearing denied November 10, 1955.

*Bloch, Hall, Groover & Hawkins, Downing Musgrove,* for plaintiff in error.

*Ben T. Willoughby, McCall & Griffis,* contra.

QUILLIAN, J. This opinion will refer to the plaintiff in error as the "defendant" or "the defendant railroad company" and to the defendant in error as the "plaintiff," they having occupied those respective relationships to the case in the trial court.

■ Grounds 4 and 5 complain that the court admitted over the defendant's timely objection evidence that prior to the time when the plaintiff's son was killed, the railroad company had not objected to members of the public crossing its tracks at the point where the plaintiff contended his son was killed, and that they had posted no signs indicating its objection to the practice. The objection interposed to the evidence was that it was irrelevant and immaterial because the issue was whether the defendant had knowledge of the crossing, not whether the defendant objected to its use by the public.

The rule is stated in the case of *Western & Atlantic Railroad Company* v. *Michael,* 175 *Ga.* 1 (6) (165 S. E. 37) : "Where persons habitually, with the knowledge and without the disapproval of the railroad company, use a private passageway for the purpose of crossing the tracks of the company at a given point, the employees of the company in charge of one of its trains, who are aware of the custom, are bound, on a given occasion, to anticipate

that persons may be upon the tracks at this point; and they are under a duty to take such precautions to prevent injury to such persons as would meet the requirements of ordinary care and diligence."

It will be noted that the duty is imposed upon the employees of the railroad company to anticipate the presence of members of the public on the crossing by reason of the fact that the public habitually use the crossing "with knowledge and without the disapproval" of the railroad company. That the railroad company did not disapprove of the use of the crossing, is pertinent and important as evidence of the habitual use of the crossing. There was no error in admitting the evidence.

■ Ground 6 of the amended motion asserts that a new trial should be granted because the trial judge allowed counsel for the plaintiff, during his argument to read Code § 94-1108: "Proof of injury prima facie evidence of want of reasonable skill and care. —In all actions against railroad companies for damages done to persons or property, proof of injury inflicted by the running of locomotives or cars of such companies shall be prima facie evidence of the want of reasonable skill and care on the part of the servants of the companies in reference to such injury."

The court ruled, and informed movant's counsel that opposing counsel was reading the Code section to the court and not to the jury. It was the right of counsel to read to the court law that he contended was applicable to the issues of the case.

The movant's counsel did not interpose any formal objection to the plaintiff's counsel being permitted to read the Code section nor did he invoke any ruling of the court as to the propriety of opposing counsel's conduct in reading the Code section, but merely stated that, "If he is going to read that I am going to make a motion for mistrial."

In the absence of a proper objection or motion for mistrial we cannot hold the trial court committed reversible error in permitting counsel to read the Code section in the presence of the jury.

■ The court charged the jury the provisions of Code § 94-1108. The defendant in the seventh ground of its motion for new trial assigns the charge as error for the following reasons:

"1. The said charge was erroneous and against movant on a material point and the giving of it to the jury was error, requiring the grant of a new trial.

"2.   The charge is the language of Code § 94-1108 of the Code of Georgia, which code section imposes upon the defendant the burden of proof.   The code section and the imposition of that burden is unconstitutional, and thus the charge was illegal, because it violates the due process clauses of the Constitution of the State of Georgia and the Constitution of the United States.

"3.   Even if legal, the code section was, and the charge at that stage of the proceeding was, inapplicable in that the defendant had put up evidence in the trial of the case and the burden of proof as charged had disappeared—that burden being one of proceeding as distinguished from the ultimate burden.

"4.   The charge was confusing to the jury and left the jury with the impression that there was a burden upon the defendant to disprove its negligence, which burden, in fact, did not in law exist."

The first assignment of error presents no question for decision except (a) whether the charge was correct as an abstract statement of the law; (b) whether it was appropriate for a jury charge. Both of these questions are answered by this court and the Supreme Court in *Slaton v. Southern Railway Co.*, 45 *Ga. App.* 781 (165 S. E. 883) ; *Southern Railway Co.* v. *Slaton*, 50 *Ga. App.* 570 (178 S. E. 392) ; *Western & Atlantic Railroad* v. *Gray*, 172 *Ga.* 286 (157 S. E. 482).

In some of the cases cited a charge in substantially the same language was approved, while others referred to simply adjudicate the validity of the statute.

The second assignment assails the charge on the ground that the Code section is unconstitutional and consequently it was error for the court to give its provision in charge to the jury.   This court is without jurisdiction to pass upon the constitutionality of the statute, but we observe that the Supreme Court held it to be constitutional.

The third assignment of error complains that it was error for the court to charge the provisions of the Code section, because the defendant had offered evidence and the presumption arising under the Code section had disappeared.

The ground is not complete and understandable within itself, and does not assign any valid reason for holding that the charge was error.

This particular assignment of error amounts to no more than an exception that the charge was not adapted to the pleadings and evidence in the case. This court held in *Georgia-Florida Motor Lines* v. *Slocumb*, 45 *Ga. App.* 204 (3) (164 S. E. 166): "Special ground 3 is not complete and understandable within itself, and therefore cannot be considered. It assigns error upon an excerpt from the charge of the court, for the alleged reason that the charge complained of was not authorized by the evidence, but none of the evidence is set out in the ground or attached as an exhibit thereto." And later in the case of *McFarland* v. *Bradley*, 82 *Ga. App.* 223, 225 (60 S. E. 2d 498), it was said: "Counsel for the defendant contend that this ground is incomplete for various reasons and presents no question for consideration by this court. One reason urged is that, though error is assigned on the excerpt quoted as being unauthorized by the evidence, none of the evidence is set out in the ground or attached as an exhibit thereto. With this reasoning we agree."

This rule does not apply when the direction of a verdict is assigned as error or to a ground of motion for new trial complaining that the verdict is without evidence to support it.

In order for a ground of a motion for new trial, or in some instances, an exception contained in a direct bill of exceptions of the nature referred to, to be complete and understandable within itself, it is necessary that virtually the entire brief of evidence be incorporated therein. It is obvious that in such instances there would be no reason to apply the rule.

But we cannot hold that it would have been necessary in order to make complete the exception referred to, to have included in the ground virtually all of the evidence, for it is apparent that all that would have been required to make the exception complete would have been a recital of specifications of negligence contained in the petition, and such portion of the evidence as would show that the defendant introduced proof to refute each specification. The ground in which the exceptions referred to is contained does not set forth any evidence by the defendant upon the trial of the case.

The exception alleges only that the defendant put up evidence in the case, and predicated upon this averment it concludes that the presumption arising under Code § 94-1108 vanished, and

hence that it was error to instruct the jury in reference to it. The exception does not disclose, nor does ground seven of the amended motion in which the exception is contained, reveal the nature of the evidence introduced or put up by the defendant, and it is not alleged in the exception or in the ground that the defendant's proof tended to disprove the charges of negligence contained in the petition, and upon which the plaintiff relied for recovery.

Such allegation was an assertion essential to the presentation of the contention that the presumption had, by reason of the defendant's introducing evidence, been eliminated, so as to render a charge concerning it inapplicable to the pleadings and proof in the case.

It is not the mere introduction of evidence by the defendant that eradicates the prima facie case arising from proof that the injuries were inflicted by the locomotive or cars of the railroad company. The defendant must, in order to extinguish the presumption, introduce some evidence to negative each of the allegations of negligence contained in the plaintiff's petition.

The fourth exception contained in ground 7, alleging that the charge excepted to was inapplicable in that it imposed upon the defendant the burden to disprove its negligence, which burden did not exist, and, while not definitely stated, it is reasonably clear that the inapplicability therein referred to is that the instructions complained of are not adopted to the pleadings and proof in the case. As pointed out in the discussion of the third exception contained in the same ground, in order for the ground to be complete or for an exception attacking a charge on the ground that it is not adjusted to the pleading and evidence, it is necessary that the ground be understandable and complete within itself. In this particular instance, according to the provisions of Code § 94-1108 after it was shown that the plaintiff's son was killed by the defendant's engine, the burden of evidence was upon the defendant to disprove its negligence and introduce proof that it was not negligent in the particulars alleged in the petition, and it does not appear from exceptions or the ground of which it is a part that evidence introduced by the defendant tended to refute the charges of negligence made against it.

■ Ground 8 of the amended motion complains that the court erred in charging the jury in the language of Code § 94-1108 and

adding thereto instructions reading: "In connection with the burden of proof in this case, I charge you, gentlemen, that the rule in cases of this kind is as follows: In all actions against railroad companies for damages done to persons or property, proof of injury inflicted by the running of locomotives or cars of such companies shall be prima facie evidence of the want of reasonable skill and care on the part of the servants of the companies in reference to such injury. However, I charge you in this connection that this inference created by proof of injury so inflicted is at an end when the company has produced some evidence to the contrary. It is the rule that upon proof of injuries inflicted by the running of locomotive cars, if the defendant introduced evidence from which the jury would be authorized to find the injury did not so occur, or if it did, was not due to the negligence of the defendant, the burden of proof is upon the plaintiff to prove one or more allegations of negligence to be the proximate cause of the injury by a preponderance of the evidence in the case."

The charge was excepted to on two grounds: "1. The charge was erroneous and against movant on a material point and the giving of it to the jury was error requiring the grant of a new trial. 2. The whole charge was confusing to the jury and left them uninstructed on a material point, i.e., as to what party the burden of proof rested upon."

The first of these exceptions raises no question except as to whether the charge was correct as an abstract principle of law. That it was legally sound there is no question, unless it left the jury uninstructed as to what party had the burden of proof..

The charge given was preceded by instructions to the jury that the burden of proof generally was upon the plaintiff. The instructions complained of informed the jury as to the effect of a rule of evidence. *Western & Atlantic Railroad* v. *Gray,* supra.

The charge is substantially in the language of the statute, a valid law of the State, and the assignment of error referred to does not show it to be inapplicable to the issues of the case.

The charge in effect was that the burden was upon the plaintiff to prove his case by a preponderance of the evidence; that by proof that his son was "injured" by the running of the defendant's locomotive cars the plaintiff might rely upon the inference arising under the Code section that the defendant's negligence

was the proximate cause of the son's death, but that when the defendant offered evidence to the contrary, evidence that would authorize the jury to find that the "injury" did not occur, or was not due to the defendant's negligence the inference was at an end, and the plaintiff could no longer rely upon it to make out a prima facie case, but must then establish by other proof constituting a preponderance of evidence that one of the acts the petition charged the defendant with having committed was the proximate cause of his son's death.

Thus the charge placed the burden of proof upon the plaintiff and did not intimate that at any stage of the trial it would shift to the defendant. It did correctly inform the jury as to the shifting of the burden of evidence. Indeed this charge presents a clear example of a charge relating to the burden of evidence as distinguished from the burden of proof.

For full information as to the distinction between the burden of evidence and the burden of proof refer to *Department of Revenue* v. *Stewart*, 67 *Ga. App.* 281 (4) (20 S. E. 2d 40).

■ In special ground 9 the defendant contends that the judge erred in charging that it was a jury question as to whether the plaintiff's son was a licensee and had the implied consent of the defendant railroad company to use the pathway across its roadbed. The defendant predicated this contention upon the ground that the charge presented an issue in reference to which there was no evidence. The particular insistence of the defendant in this regard is that there was no proof that the railroad company by any affirmative action gave its consent to the pathway being used to cross its tracks, and that simply because the public had become accustomed to travel the pathway over the railroad tracks and that the railroad company had taken no action to prevent it did not constitute the persons using the pathway, including the plaintiff's son, licensees.

In *Williams* v. *Southern Railway Co.*, 11 *Ga. App.* 305, 311 (75 S. E. 572) it is said: "But, after all, there is little substantial difference in the rule of law applicable to trespassers and licensees. If the employees of a railway company, or those in charge of the running of its trains, have knowledge that the public, either as trespassers or as licensees, may be expected to be upon the track at a particular place, it is their duty to anticipate this

presence and to use proper care and diligence to avoid injuring them. . . We conclude that 'a sound and wholesome rule of law humane and conservative of human life,' is to impose upon railroad companies the duty of special care, where people are to be expected on the tracks, whether as trespassers or licensees. It is the frequency of the use, and not the character of the use, that raises the duty of anticipation and diligence."

While the charge was not applicable to the issues of the case since there was no evidence from which it could be inferred that the plaintiff's son was a licensee, from what is held in the *Williams* case it is apparent that the error was harmless. *Lassiter* v. *Atlanta & West Point R. Co.,* 61 *Ga. App.* 23 (5 S. E. 2d 603); *Southern Railway Co.* v. *Barfield,* 112 *Ga.* 181 (37 S. E. 386); *Dodson* v. *Southern Ry. Co.,* 55 *Ga. App.* 413 (190 S. E. 392); *Hammontree* v. *Southern Ry. Co.,* 45 *Ga. App.* 728 (165 S. E. 913).

▌ Grounds 10 and 11 of the amended motion for new trial allege that the court erred in charging the jury: "Now, gentlemen of the jury, I charge you this in connection with that, that if you find that he was killed, as alleged and set out in the suit, and that it was in such close proximity to the public crossing, although you should find that he was killed on a private crossing, if you find that he was killed in such close proximity to the public crossing that any failure on the part of the railroad company, by and through its servants, agents and employees, in approaching the public crossing as amounted to negligence on their part that was the proximate cause of the man getting killed where he was killed, then you could consider the law with reference to the public crossing, and I will give you the law now in charge in regard to a public crossing and what is required by the railroad company in approaching a public crossing:

"Upon the line of each railway and at a point four hundred yards from the center of its intersection at grade with any public road or street used by the public generally in crossing the tracks of said railway, and on each side of side crossing, there shall be erected by the railroad company, or the person or corporation owning and operating said railway, a blowpost to indicate the existence of such crossing; and the engineer operating the locomotive engine of any railroad train moving over the track of said railroad shall be required, when he reaches the said blowpost, as

a signal of approach to said crossing, to blow through said whistle or horn two long, one short, and two long blasts at intervals of five seconds between each blast, said blasts to be loud and distinct. In addition thereto, after reaching the blowpost farthest removed from said crossing, and while approaching said crossing, he shall keep and maintain a constant and vigilant lookout along the track ahead of said engine, and shall otherwise exercise due care in approaching said crossing, in order to avoid doing injury to any person or property which may be on said crossing, or upon the line of said railway at any point within fifty feet of such crossing.

"Now, gentlemen of the jury, this law that I have given you in charge with reference to the public crossing would not apply if you find that the man was killed, if you believe he was killed, by the railroad company a quarter of a mile or a half a mile from a public crossing. But if you find, gentlemen of the jury, that he was killed in close proximity to the public crossing, and you should believe that the private crossing that he was killed on, if he was killed on a private crossing, was so close to the public crossing that any negligence or failure on the part of the railroad company, or its employees, to observe the law with reference to the public crossing, if you believe that it was so close that their failure to comply with this public crossing law entered into and became a proximate cause for the killing of this man, then you could consider this law and take it into consideration in the case; otherwise not.

"In other words, gentlemen of the jury, the law that I have given you in charge heretofore has been altogether with reference to a private crossing.

"Now, if the evidence in this case should develop, gentlemen, that the private crossing was in such close proximity to the public crossing, as I have just said, that any negligence, if any, on the part of the railroad company in observing the public crossing law became a proximate cause of the man being killed, then you could take this into consideration in determining what your verdict would be as to whether or not the railroad company was negligent, and if negligent, what part, if any, of that negligence was attributable to them; and I charge you, as I charged before, that ordinary care is the rule that is applied to both sides. Ordi-

nary care and diligence by the railroad company, their servants, agents and employees, applied; and also the plaintiff's son was bound by the same rule of ordinary care and diligence.

"Now, is that what you want, gentlemen? I can't tell you, gentlemen, what the truth was. You will have to remember what the truth was; and if you find that the man was killed on a private crossing, and that private crossing was in such close proximity to the public crossing that the rule of law with reference to the public crossing would apply and ought to be considered in the case, then you would consider it; otherwise you would not, and you would just consider the case as if there was no public crossing involved in it, and would only consider the law applicable to the private crossing.

"It is a question for the jury to determine, gentlemen, whether if the man was killed and the company killed him through their negligence, it was in close proximity to the public crossing."

The charge complained of amounted to no more than instructing the jury that if they believed the defendant's employees did violate the public-crossing law they might consider that fact in determining whether their negligence caused the deceased's death.

The court qualified the charge by instructing the jury to the effect that if it should appear that the defendant's employees were negligent in failing to comply with the "crossing law", in order for such negligence to be considered by them it must further appear that the pathway upon which the deceased was killed was in close enough proximity to a crossing for such negligence to be "a proximate cause" of the fatal occurrence.

While not couched in the language employed by Judge Harwell in his charge to the jury on the same subject, approved in *Macon & Birmingham Railway Co.* v. *Parker,* 127 *Ga.* 471 (56 S. E. 616), the charge of the trial judge was of the same legal import. In the *Parker* case the rule was stated: "3. In a suit for damages on account of injuries received by the operation of the trains of a railroad company at a point within a city, between two public crossings, but not closer than 250 yards from the nearest crossing, it was not erroneous for the judge to instruct the jury that if there was a failure of the servants of the defendant operating the train to comply with the law with respect to keeping the cars under control and ringing the bell at public crossings, while such

failure would not within itself amount to such negligence as to become the basis of a recovery, yet the jury might consider such failure as a circumstance in connection with all of the other evidence in the case, in determining whether or not the railroad company was negligent." We think a charge which, as in the present case, merely submitted to the jury the propositions that, under given circumstances they might consider the defendant's employees' failure to comply with the public-crossing law, in deciding whether the defendant's employees were negligent as charged in the petition is substantial compliance with the rule announced in the *Parker* case, supra. It will be noticed that the court had previously in his general charge instructed the jury: "The plaintiff in the case can only recover by the proof that the defendant was negligent in the manner alleged in his petition." A failure to comply with the public-crossing law was not alleged as an act of negligence, so a jury of men of ordinary intelligence could not have taken the charge as a whole to mean that the failure of the railroad company's employees to comply with the laws applicable to the operation of locomotives approaching public crossings would of itself authorize a recovery, but according to the court's entire charge could be considered in deciding whether they were negligent in the particulars alleged in the petition.

While at one point in the criticized charge the court used the expression that the jury would have to determine "whether the rule of law with reference to the public crossing would apply and ought to be considered in the case", from the context of the phrase, we think it was reasonably clear to the jury, that the court intended to instruct them that it was for them to determine whether the rule of law that he had just given them was applicable, that is, simply whether the private crossing was in close enough proximity to the public crossing for the failure on the part of the defendant's employees to observe the public-crossing law to be considered by the jury in reaching a conclusion as to whether the defendant's employees, under the facts of the case referred to in the charge complained and in other parts of the court's general charge to the jury, failed to exercise ordinary care to avoid injuring the deceased.

■ Ground 12 of the amended motion complains that the court refused a timely written request to charge legal principles perti-

nent to the case, the charge requested being: "I charge you that under the pleadings and evidence in this case unless you believe that the accident which is the subject of this suit occurred at or near a public or private path as contended by the plaintiff, then you must find for the defendant."

From an examination of the court's charge it appears the trial judge had by appropriate instructions eliminated from the jury's consideration the question of the defendant's liability, if it appeared that the deceased was killed elsewhere than at or near a pathway generally used by the public, and qualified those instructions further by pointing out that such pathway must have been used with the defendant's knowledge, and without objection to its use by the public having been made by the defendant.

■ The 13th ground of the motion for new trial is disposed of by what has been written in this opinion in passing upon other grounds.

■ The railroad company filed a motion for judgment notwithstanding the verdict. The motion was predicated upon the insistence that the plaintiff's evidence did not prove the case as laid in count one of the petition. It is pointed out in the railroad company's brief that since the case was submitted to the jury on the theory of simple negligence, in order to entitle the plaintiff to recover it was necessary that he prove: (a) That his son was killed at a private pathway on the track habitually used by a number of persons; (b) The use of the pathway was with the knowledge and without the disapproval of the defendant; (c) That the particular employees operating the defendant's train were aware of the custom; (d) That they failed to exercise ordinary care to prevent injury to persons using the pathway.

The first element of proof includes the proof that the pathway was one habitually used by a number of persons, and that the defendant's son was killed at the locale of the pathway. Evidence sufficient to make an issue as to whether a number of persons customarily used the pathway was supplied by the plaintiff's positive testimony to that effect, and the testimony of a witness, Eugene Griffis, that people had used the pathway since World War I.

There was also sufficient evidence to make a jury issue as to whether the plaintiff's son was killed on the pathway. The plain-

tiff testified that about 25 or 30 steps from the crossing, in the direction other evidence showed the train was moving, he found his shoes, and fragments of his son's body in the same area. The jury could have drawn a natural and reasonable inference from the facts related by the witness and the logical conclusion that the momentum of the train would have carried the body of the deceased from some distance past the crossing.

There was ample evidence to support the affirmative of the issue as to whether the pathway had been habitually used by the public with the knowledge and without disapproval of the railroad company. The testimony of the plaintiff himself, and the witness Eugene Griffis, showed the long uninterrupted use of the pathway, and the known habit of members of the public to go across the railroad tracks at that point. There was evidence that the railroad company had posted no sign at the locale of the pathway prohibiting its use; that publication of the company's disapproval of its use, would have been about the only feasible method of giving notice to the public of the railroad company's objection to the pathway being used. There was no evidence of any publication of such notice.

We next consider the contentions of the defendant that there was no sufficient evidence from which the jury might legitimately infer that the employees in charge of its locomotive on the occasion of the tragedy knew of the existence of the crossing and its habitual use by a number of persons.

We are of the opinion that there was sufficient circumstantial evidence of the nature we have previously discussed in this opinion to carry this issue to the jury.

This brings us to consideration of the issue as to whether after the duty devolved upon the employees in charge of the defendant's engine to anticipate and avoid injury to the plaintiff's son, they exercised ordinary care in the discharge of this duty.

In *Brewer* v. *Janes,* 76 *Ga. App.* 447, 452 (46 S. E. 2d 267), Chief Judge Felton, with approval of the court wrote: "It has been held that, where the train employees see an object on the track and honestly mistake it for an inanimate object or one other than a human being, they may proceed without taking steps to stop the train. *Willis* v. *Central of Ga. Ry. Co.,* 11 *Ga. App.* 717 (75 S. E. 1132); *Southwestern Railroad* v. *Hankerson,*

61 *Ga.* 115; *Moore* v. *Southern Ry. Co.*, 136 *Ga.* 872 (72 S. E. 403). On the other hand, it has been held that where an object is observed on the track and the employees are uncertain what it is, it is the duty of the engineer to take steps immediately to stop the train, even though the person on the track be a trespasser. *Central of Georgia Ry. Co.* v. *Pelfry*, 11 *Ga. App.* 119 (74 S. E. 854). Since in this case the boy could be found to be a licensee, anticipation of his presence could have been found to have been required, and it follows that in such a situation it was the duty of the engineer to stop the train immediately upon discovery of an object on the track the nature of which was unknown, or to take such steps as to have the train under such control that he could stop it without striking the object in the event it happened to be a human being. The jury in this case were authorized to find that the engineer was uncertain as to what was on the track. While he testified that he thought it was a piece of paper, yet he had had to ask the fireman what it was, and the fireman, while he thought it was a piece of paper when viewed from the engineer's window, was uncertain and returned to his own window to obtain a better view. . . In this case, the engineer did not begin to check the speed of the train immediately upon the discovery of an object on the track, but waited until he was sure that it was a human being and then it was too late to avoid striking him. The jury was authorized to find that the railroad was bound to anticipate the presence of the child, and that it failed to take such steps as were consistent with the exercise of ordinary care to avoid injuring him."

In this case the engineer at the throttle and in immediate control of the locomotive testified that, when he first saw the object on the rails that afterwards was discovered to be the plaintiff's son, he could not discern what the object was; but after proceeding nearer to it he thought it was a piece of cow being eaten by buzzards. This witness also swore as the examination proceeded that he thought the object was a pulley belt that had fallen from another train. He did not so far as the record discloses apply the engine's brakes or give warning of the engine's approach until he discovered that the form on the track was a man. The facts of this case are similar to those in *Brewer* v. *Janes,* supra, in that the engineer when he saw the object on the tracks, was not able

to discern what it was, did not slacken the speed of the train, or sound alarm of its approach. This is true according to the testimony of the engineer himself. From the facts that he gave to versions of what he thought this object was when he approached it even closer, an inanimate object, the pulley belt, or an object partly animate and partly alive, a piece of cow being eaten by buzzards, the reasonable inference arises that he still could not determine the nature of the object. Even then he did not put on the brakes, blow the engine's whistle or sound its bell.

In *Central of Georgia Ry. Co.* v. *Grace,* 46 *Ga. App.* 101, 102 (166 S. E. 684) it was held: "If the weather was clear and there was no fog or smoke to obscure the vision of the engineer and the fireman, and the track in front of the engine was straight for a long distance, the jury were authorized to find that if the engineer and the fireman had kept a proper lookout ahead of the train, they could have seen the cow in time to stop the train, its speed being only thirty miles an hour, and that their failure to keep a proper lookout ahead was negligence causing the death of the cow. *Georgia R. &c. Co.* v. *Churchill,* 113 *Ga.* 12 (38 S. E. 336); *A. C. L. R. Co.* v. *Strickland,* 125 *Ga.* 352 (54 S. E. 168); *A. C. L. R. Co.* v. *Willis,* 42 *Ga. App.* 768 (2), 771 (157 S. E. 254); *Southern Ry. Co.* v. *Rundle,* 37 *Ga. App.* 272 (139 S. E. 830); *Southern Ry. Co.* v. *Lang,* 11 *Ga. App.* 8 (74 S. E. 443)."

The track in the instant case was, according to the testimony of the plaintiff, straight and level for a distance of three miles in the direction the engine proceeded to the pathway where it killed his son, and according to his sworn evidence the day was clear.

In *Ellis* v. *Southern Railway Co.,* 89 *Ga. App.* 407, 415 (79 S. E. 2d 541) it was held: "However, the plaintiff introduced positive evidence of the want of due skill and care on the part of the defendant's employees in operating the train, which evidence would have authorized a jury to find in her favor on this issue. The evidence in this respect showed among other things that a person who was only a few hundred feet away from the scene of the homicide did not hear the ringing of any bell or the blowing of any whistle until after the train struck Mr. Ellis. This would be some evidence that the bell was not being rung, and the evidence was otherwise such as to make a jury issue as to whether

the circumstances required it to be rung in the exercise of ordinary care in the operation of the train."

In the case at bar the plaintiff who professed to be at a point close enough to the railroad tracks to hear the whistle of locomotives traversing them, positively testified that the whistle of the engine was not blown on the occasion under investigation.

There was sufficient evidence to support the finding of failure on the part of the defendant's employees in charge of its engine to exercise ordinary care in anticipating the presence of the plaintiff's son on the tracks at the pathway, and to avoid injury to him after becoming apprised of facts sufficient to put a reasonable man on notice of his presence there.

The court properly overruled the motion for a judgment notwithstanding the verdict.

There is no merit in the general grounds of the motion for new trial.

*Judgment affirmed on main bill of exceptions, cross-bill dismissed. Gardner, P. J., Townsend, Carlisle, Nichols, JJ., concur. Felton, C. J., dissents.*

FELTON, C. J., dissenting. I think a new trial should have been granted because the court erred in the manner in which he charged the blowpost law. (Grounds 10 and 11 of the amended motion for a new trial.) The first count of the petition as amended does not charge negligence with reference to a public crossing, either directly upon it or *within fifty feet of it. The charge in this case authorized the jury to find for the plaintiff on a specification of negligence not contained in the petition.* In this case the court in effect charged *that if the jury believed that the failure to observe the law with reference to the public crossing was part of the proximate cause of the death,* they could find against the defendant. The ruling in *Macon & Birmingham Ry. Co. v. Parker,* 127 *Ga.* 471 and similar rulings do not control the questions here because the court in those cases specifically limited the application of the blowpost law to a mere circumstance which might indicate the commission of other acts of negligence. The rulings which authorize a limited application of the blowpost law under circumstances similar to those in this case are dangerous at best and should be restricted rather than extended.