## 49200. GAZAWAY v. SEABOARD COAST LINE RAILROAD COMPANY.

DEEN, Judge.

The evidence on this appeal from a directed verdict for the defendant railroad on the trial of a crossing collision is substantially as follows: The plaintiff was on his way to work on a paved road paralleling the tracks when he decided to "heed a call of nature." He turned off onto a dirt road which crossed the tracks about 30 yards away and led a short distance to a water tower of the City of Rockmart. It appears that there had originally been a farmhouse to which the road led. Thereafter the house was removed, and an archery club made sporadic use of

the site for bow and arrow practice, placing chains across the roadway attached to posts. In 1950, the city had considered buying the then vacant property for a landfill and at its request the county worked the road one time so that vehicles could enter, but the idea of purchase was abandoned and nothing further was done. In 1966 the city purchased the property for the purpose of erecting a water tank, the only improvement placed on it, filed a plat of the property showing the dirt "access road," and actually extended the road up to the tank. This was thereafter worked by city equipment to the extent necessary to provide access to city vehicles. There was no reason for any other person to use it and an engineer of trains on the route for the past 30 years could not remember ever having seen it used, but the plaintiff had seen people going in and out, and testified that he passed the location daily on his way to and from work. The city attempted to keep the chain up after its erection of the tower, but it would be torn down by vandals, and at the time of the collision the posts were in place and the chain lying on the ground. The crossing was marked on each side by a cross-buck "Railroad Crossing" sign, which could be seen by one traveling north, along with the tracks, some 200 feet away; there were embankments and heavy vegetation, including trees, but photographs introduced by the defendant showed that a distance of 50 feet from the intersection of both train and automobile, they would be clearly visible to the respective operators. The crossing was a mile or less beyond the city limits of Rockmart. The plaintiff was aware of the tracks, crossed them and went 75 yards toward the water tower, relieved himself, and attempted to recross the track when he was hit. He does not remember stopping at the crossing or any awareness of the train prior to impact. The engineer testified that the train was traveling approximately 40 miles per hour (speed limit being 60 mph), that the headlight was burning and the whistle had been blowing for the past half mile (for another crossing), and that he saw the automobile as "a red blur" just before impact.
*Held:*

1. The evidence demands a finding that the roadway in question was a private and not a public

thoroughfare. It had not been dedicated to the public, it had not been used by the public so as to gain prescriptive rights, and the mere fact that the city had purchased it as a location for a water tower did not have the effect of turning its access road into a public highway. Neither did the recording of the plat. Nor did the plaintiff come on the property for any purpose connected with the railroad or the municipality, so he was a trespasser or at most a licensee. The railroad company therefore owed him only the duty to exercise ordinary care not to harm him once his presence had been discovered. *Bridges v. Southern R. Co.,* 96 Ga. App. 497 (100 SE2d 619).

2. The duty to anticipate the presence of travelers across a private right of way is coincident with knowledge that such persons customarily use the roadway. *Ga. Southern &c. R. Co. v. Wilson,* 93 Ga. App. 94 (91 SE2d 71). The uncontradicted testimony here being that railroad employees who had traveled this route twice a week for thirty years had never seen a car crossing at the spot in question, and that they did not see the plaintiff until just before the impact, conclusively negatives lack of care in failing to discover the presence of the defendant on the track in time to stop.

3. There is no evidence that the defendant's train was traveling over 60 miles per hour, the speed limit, although the engineer testified that he was going 40, and the plaintiff said he thought it was faster than that.

4. It was held in *Western & A. R. v. Gray,* 172 Ga. 286, 297 (157 SE 482): "Where a railroad company builds a crossing over its road and undertakes to keep it in repair for the accommodation of the public, this is equivalent to an invitation to the public to use the same; and if a person using the crossing sustains injury from defects negligently permitted to exist or remain in the crossing, the company will be liable in damages." While the railroad had placed crossbars at the intersection as a warning to any person who, rightly or wrongly, might have been using the road, it at no time undertook any other repairs or improvements, nor does there appear any reason why it should have done so in view of the extremely limited amount and purpose of traffic across it. See Clark v. A. C. L. R. Co., 288 F2d 255. Therefore,

we do not think the fact that the defendant did not remove the embankment or cut down the trees can be counted as negligence, where a person traveling the road did in fact have warning of its existence and ample space in which to stop and ascertain that nothing was approaching before entering on the tracks.

The trial court properly directed a verdict for the defendant.

*Judgment affirmed. Stolz and Webb, JJ., concur.*

SUBMITTED APRIL 2, 1974 — DECIDED APRIL 9, 1974.

*Gammon & Anderson, Joseph N. Anderson,* for appellant.

*Troutman, Sanders, Lockerman & Ashmore, William H. Schroder, Jr., Glenn T. York, Jr.,* for appellee.