### 2190.  STAMPS *v.* NEWTON COUNTY.

1. In refusing to strike that portion of the defendant's plea which set up that the death of the plaintiff's child was the fault of the plaintiff herself in negligently and carelessly permitting the child to pass over the foot-bridge without the guidance of some other person, well knowing that the stream at that time was very much swollen and in a dangerous condition, and that the plaintiff aided and contributed to her own injury by allowing the child to enter upon said foot-bridge without some

other person to guide the child and prevent her from falling, the court did not err, inasmuch as the defendant had the right to introduce evidence to show, if it could, that the mother was present, or at least in sight, at the time the child was drowned.

2. While a mother who is compelled to earn her own living by her labor may not be required, in the exercise of due diligence, to be present at all times and personally overlook the care of her children, still she is responsible for the exercise of ordinary care for the safety of her child while the child is in her presence.

3. While isolated excerpts from the judge's charge to the jury, to which exception is taken, may seem inaccurate, the charge, construed as a whole, was extremely favorable to the contentions of the plaintiff in error, and fairly and fully presented the law applicable to the issues presented by the pleadings and evidence.

(*a*) Construed together, all of the instructions of the court tended to impress the jury that if the death of the child was due to a defect in the bridge of which the county authorities had knowledge or notice, the plaintiff's right of recovery could not be defeated.

(*b*) The instruction to the effect that the plaintiff was not entitled to recover unless the county authorities knew of the defect in the bridge, or unless this defective condition had existed for such a length of time that knowledge thereof on the part of the county authorities would be presumed, was correct. Under the evidence adduced, and, when taken in connection with the further instruction that if the bridge was originally negligently or defectively constructed, and any defect in the bridge was the cause of the child's death, the county would be liable, the charge afforded no ground for complaint.

(*c*) Whether the omission to replace guard-rails upon the bridge, if guard-rails were previously there, or the failure to put guard-rails upon the bridge in the first instance, was or was not negligence on the part of the county authorities, was a fact to be determined by the jury from the circumstances of the case.

4. In any case in which it is contended that the circumstances of the transaction call for the application of the doctrine of res ipsa loquitur, the prerogative of the jury to judge whether the circumstances of the case itself are such as to raise an inference of negligence and to fix the liability upon the defendant for the act complained of (unless a satisfactory explanation is offered by him) is exclusive, and not reviewable. The jury were authorized in the present case to find that neither the condition of the bridge nor the other circumstances in the case placed upon the defendant the burden of proving how the casualty resulted and that it was due to the negligence of the county.

5. It is the duty of the proper county authorities to construct and maintain bridges across streams in a workmanlike and proper manner, so that any person may use them with safety, in ordinary travel, but this duty is not one of extraordinary care and diligence, nor does its exercise extend to extraordinary occasions, beyond the ken of general experience. The law does not make the county authorities insurers of the safety of any of those who use bridges.

6. It was not error to exclude from the consideration of the jury nails taken from the bridge in 1909, since the question at issue was the condition of the bridge in 1908, more than a year previous.

7. In the absence of any evidence as to the value of the child's services, it was not error to omit to instruct the jury upon the measure of the plaintiff's recovery upon that count of the petition.

8. It was not error to instruct the jury in substance that even though both the plaintiff and the defendant might be negligent, the plaintiff's right to recover would not be defeated if the death of the child was caused by the negligent condition of the bridge, and the child in crossing was using as much care as would be used by a person of full discretion. The charge of which complaint is made presented one of the strongest contentions of which the evidence in behalf of the plaintiff was susceptible.

9. Hearsay testimony is permissible in explanation of conduct, or, as in this case, for the purpose of identifying and locating objects referred to in the testimony.

DECIDED SEPTEMBER 20, 1910.

Action for damages; from city court of Covington—Judge Whaley. September 18, 1909.

*Middlebrook, Rogers & Knox,* for plaintiff.

*R. W. Milner,* for defendant.

RUSSELL, J. Susan G. Stamps brought suit for damages against Newton County, alleging that in August, 1908, her daughter, five years old, while crossing a public foot-bridge of the county, fell therefrom and was drowned, in consequence of the fact that one of the planks upon the bridge was not nailed, and tilted and threw the child into the stream. She sued both for the value of the child's life and the value of its services. The evidence in regard to the circumstances attending the child's death was conflicting. There was no testimony as to what was the value of the child's services, or as to whether they were of any value. The verdict was for the defendant.

1. The plaintiff moved to strike that portion of the defendant's answer in which the county set up contributory negligence on her part. If the judge erred in not sustaining the motion to strike, the error was cured by his instructions to the jury. They were told specifically that negligence on the part of the plaintiff could not defeat her recovery, if the proximate cause of the child's death was negligence of the county in the construction and maintenance of the bridge from which it fell to its death. But aside from this, we do not think the judge erred in refusing to strike this portion of the plea; for, conceding that a mother is not necessarily required to keep personal supervision of her children at all times, and that it

might not be negligence on her part if they wander away from home and expose themselves to danger, still the plea is not addressed to that state of facts. The defense contemplated a state of circumstances in which the mother was in sight; and in such a case it would be a question whether she could or ought to have prevented the child from going upon the bridge. And if she was present and permissibly acquiesced in the child's putting itself in a situation where the danger was apparent, she might be brought within the rule laid lown in the case of *Atlanta & Charlotte Ry. Co.* v. *Gravitt,* 93 *Ga.* 369 (20 S. E. 550, 26 L. R. A. 553, 44 Am. St. R. 145). Being present with the child, the circumstances would be so altered that the rule of diligence applicable would·be entirely different from that which would apply if she had been necessarily away from her child.

2. It is strenuously insisted that a mother who is compelled by her financial necessities to earn support for herself and her children is not required to exercise personal supervision over them at all times, that necessarily she must be absent from them, in some occupations in which she may be engaged in earning a livelihood. Personally we agree with this contention, but we find nothing in the judge's charge to the jury which limited their right to consider this phase of the case. It is in every case a question for the jury, as to whether the acts of the persons involved, when considered in the light of all the circumstances, were duly diligent or unduly negligent under the peculiar circumstances of the case. Negligence in one case might not be negligence in another, but it is for the jury to say whether negligence existed or due diligence was exercised in either.

3. While isolated excerpts from the charge, of which complaint is made in several of the grounds of the motion for new trial, viewed apart from their setting, might seem to be inaccurate, yet when the charge is construed as a whole it is plain that no right of the plaintiff was prejudiced. The instructions of the trial judge were extremely favorable to her contentions. So far as the charge of the court is concerned, she would have been fully authorized to recover the full value of her child's life, if the jury had been impressed with the view that the death of the child occurred in the way that she testified it did, and if it had been satisfactorily shown that the county authorities were negligent in the construction or mainte-

nance of the bridge. On the other hand, the jury were fully authorized to conclude primarily that the death of the child might have occurred in some other way, or that, no matter how the death resulted, it was not due to any defects in the bridge which should have been obviated by the exercise of care on the part of the county authorities. The jury may have concluded, and we think could have done so, that the erection of a guard-rail would have added nothing to the safety of the bridge, so far as a child four or five years old was concerned, for the reason that the child could have easily passed under these guard-rails and walked off or fallen off into the stream below. At any rate, the question as to what kind of bridge should have been maintained at this point, in the exercise of ordinary diligence, was fully and fairly submitted by the court to the jury, and in the state of the evidence we do not think it was obligatory upon the trial judge to grant a new trial. For that reason, we certainly can not interfere. It can not serve a useful purpose to discuss the various exceptions to the charge to the jury, and, so far as reference thereto is necessary, our view will be found in the headnotes.

4. It is insisted that the circumstances of the case call for the application of the doctrine of res ipsa loquitur. If it be conceded that this is so, it is to be borne in mind that the maxim or doctrine of res ipsa loquitur is the mere statement of a rule of evidence; and there was nothing in this case to prevent the jury from applying it if they had seen proper to do so. In any case in which it is contended that the circumstances of the transaction are governed by the doctrine of res ipsa loquitur, the prerogative of the jury to judge whether the circumstances of the case itself are such as to raise an inference of negligence and to fix liability upon the defendant for the act complained of, unless a satisfactory explanation is offered by him, is exclusive, and not reviewable. The jury were authorized in the present case to find that neither the condition of the bridge nor the other circumstances in the case placed upon the defendant the burden of proving how the casualty resulted, and that the county was not responsible therefor. There was nothing in the charge of the court to prevent the jury from saying that the circumstances of the case themselves spoke of negligence, and placed the burden of explaining the apparent prima facie negligence upon the county. But the jury were not compelled to indulge this infer-

ence, and if the plaintiff had desired the attention of the jury to be addressed specifically to this rule of evidence, an appropriate request should have been made.

5. While it is the duty of the several counties of this State to construct all bridges (even foot-bridges) across streams in a workmanlike and proper manner, so that any person using ordinary care may use them with safety in ordinary travel, the county authorities are not required to use extraordinary care and diligence, even to foresee casualties resulting from extraordinary occasions. Of course, in the exercise of extraordinary care, the fact that streams will rise and freshets occur will be taken into account. But such an extraordinary case as that a bridge might be engulfed by an earthquake would not reasonably be anticipated, and would not be within the purview of the county's duties. In other words, the county authorities are not insurers of the safety of those who use the public bridges. The county is to build bridges reasonably safe for ordinary use, with an eye to those extraordinary strains and extraordinary occasions which rise within ordinary human experience.

6. The nails which were taken from the bridge in 1909 were properly excluded from evidence, not only because the accident occurred in 1908, nearly a year before, and therefore the nails were not illustrative of the condition of the bridge in 1908, but also because there was no evidence that they were taken from the plank which, it was alleged, tilted and caused the child's death.

7. There was no error in omitting to give the jury instructions as to the measure of the plaintiff's damage for the loss of the services of her child; for the reason that there was no evidence as to the value of the child's services. Furthermore, this omission could not have been harmful, for the reason that the plaintiff sued both for the value of the child's life and the value of its services, and she could not recover for both. It is probable that if she had recovered, her recovery would have been larger in case the jury allowed her the value of the child's life than if the recovery were for its services until it reached its majority; and the right of the plaintiff to the value of the child's life provided the jury found the county negligent was fully explained.

8. The charge of which complaint is made in the 8th special ground of the motion for new trial was really very favorable to the plaintiff. It was equivalent to telling the jury that certainly, if

the child was acting as a grown person would act, the plaintiff could recover even though both the plaintiff and the defendant were negligent.    In other words, the jury were told that even if they believed the plaintiff was negligent in caring for the safety of her child, yet if the child was acting in the discreet and cautious way in which a careful grown person would be supposed to act, the defendant, if negligent, could derive no benefit from the plaintiff's negligence.

9.    It is insisted that the court erred in admitting the evidence of the witness John Dobbs, as follows: "I saw the bridge the next day after the child was drowned.    I saw some children there that day. I saw the child that testified here, I just asked all of them where the child fell off, and could not tell which one told me.    This one was present when I told some one to show me where the child fell off, and they showed me.    I asked them all where she fell off, and they said right here about the middle of the bridge.    This child was in the crowd, but I don't know whether she said a word or not." It is contended that this testimony was purely hearsay as to all the children save the one who testified, and that it did not contradict her testimony.    It is true this testimony is hearsay, but for the purpose of identifying location, or time, or as explanatory of conduct, hearsay is admissible.    The court did not err in overruling the objections to this testimony.

From a review of the case as a whole, we conclude that the jury decided that the bridge, a photograph of which was before them, was reasonably safe, and therefore its construction did not speak of negligence, and that the manner of the child's death was not proven to the satisfaction of the jury.    Furthermore, there was no evidence that the child contributed to the support of the mother, or as to the value of its services.    There was no error in refusing a new trial.                                    *Judgment affirmed.*