31794. BREWER, receiver, etc. *v.* JAMES.

Decided January 13, 1948. Rehearing denied February 14, 1948.

*Kenyon, Kenyon & Gunter*, for plaintiff in error.

*Hamilton Kimzey, Irwin R. Kimzey, Herbert B. Kimzey*, contra.

FELTON, J. 1. The evidence adduced on the trial pictures the locale and circumstances of the plaintiff's son's death substantially as follows: The plaintiff had been an employee of the defendant railroad company for a number of years, and he had occupied one of the defendant's section houses since 1929. The section house, fronting upon the highway and facing west, was located between the highway and the railroad track. The railroad and highway ran in northerly and southerly directions. A

driveway led from the highway north of the section house to the section-house garage and from the garage continued as a pathway to the section-house barn. From the barn the pathway continued to a tool house located slightly north of the section house and immediately adjacent to the railroad track. The pathway, running along the side of the tool house, crossed the railroad track just north of the tool house and led to the plaintiff's woodyard, which had been in use for approximately two years, a garbage dump, and to a cow pasture and farm land on the east side of the track. The tool house was used by the railroad company and the plaintiff for storing railroad material and a railroad motor car, which the plantiff used in going to and from work as an employee of the railroad company. From the door of the tool house to the track were two rails used for the purpose of removing the motor car from the track and transferring it to the tool house. In order to facilitate the operation of removing the motor car from the track, employees of the railroad company had constructed a platform between the rails of the main track by laying 3″ x 10″ planking parallel to and on a level with the rails. This platform was seven feet in length. North of the tool house the railroad track was straight and the view unobstructed for a distance of between 600 and 750 feet. The plaintiff had been accustomed to bring old crossties home on the motor car and throw them into his woodyard to be used for firewood for at least two years. The pathway had been in use by the people of the community for a great many years. The plantiff testified that it had been used since 1929, to his certain knowledge, and there was other testimony that it had been used for a much longer period of time, though the witnesses for the defendant denied knowledge of its use or even of its existence. While the pathway crossing the railroad track did not lead to other houses across the track, it was used as a short-cut to the Upson road and for the purpose of going to and from the woodyard, garbage pile, cow pasture, and farm land on the east side of the track. The presence of the plaintiff's son on the track was unexplained. The child's sister testified that she had seen him five minutes before the defendant's train arrived. At that time he was sitting on a brick beside the tool house whittling a pistol from a piece of wood. The engineer and fireman on the defendant's train

testified that, as the train, running southward, came around a curve in the track north of the tool house and entered the straight length of track—which, as we have said, covered a distance of from 600 to 750 feet north of the tool house—the engineer noticed an object between the rails of the track, lying south of the platform in front of the tool house, or as the fireman stated, lying very close to the platform, "say two or three feet." When the engineer saw the object on the track, believing it to be a piece of brown paper, or something along that line, without reducing his speed or making any preparation for stopping the train, he called the fireman to his side of the engine and asked him what the object was. The fireman believed it to be a piece of paper, but returned to his side of the engine in order to get a better view. However, before the fireman reached the window on his side of the cab of the engine, the engineer discovered that the object was a human being and applied the brakes, throwing the fireman off balance against the engine. The fireman testified that the engineer sounded the train whistle at a distance of about 600 feet from the child, and discovered that the object on the track was human when within approximately 300 feet of the child, and that the engineer immediately applied the brakes, sanded the track, etc. The engineer testified that from the time he saw the object on the track he did not take his eyes off it, and that as the train came nearer he suddenly saw the child's shoes and realized the true nature of the object on the track. According to the engineer, the child was lying south of the platform in a crouched position with his feet touching the end of the platform with his head against one of the rails. The entire train, about 200 feet in length, passed over the body of the child. The train had been traveling at about 30 miles per hour. The child's body was recovered at a point about 150 feet south of the platform.

While the petition alleges that the child was in the path when he was hit by the train, we think that the other facts alleged and proved authorized the finding that under the facts the railroad's employees were under a duty to anticipate the presence of the plaintiff and his family in the vicinity of the path and platform. Indeed the receiver in his brief concedes that whether the child was on the path when he was hit is not of major importance. The battleground of this case is elsewhere—on the question

whether the employees of the railroad exercised the required degree of care under the circumstances. The receiver contends that his employees exercised the required care, that they took all possible steps to bring the train to a stop after they discovered that the object on the track was a human being. It has been held that, where the train employees see an object on the track and honestly mistake it for an inanimate object or one other than a human being, they may proceed without taking steps to stop the train. *Willis* v. *Central of Ga. Ry. Co.,* 11 *Ga. App.* 717 (75 S. E. 1132); *Southwestern Railroad* v. *Hankerson,* 61 *Ga.* 115; *Moore* v. *Southern Ry. Co.,* 136 *Ga.* 872 (72 S. E. 403). On the other hand, it has been held that where an object is observed on the track and the employees are uncertain what it is, it is the duty of the engineer to take steps immediately to stop the train, even though the person on the track be a trespasser. *Central of Georgia Ry. Co.* v. *Pelfry,* 11 *Ga. App.* 119 (74 S. E. 854). Since in this case the boy could be found to be a licensee, anticipation of his presence could have been found to have been required, and it follows that in such a situation it was the duty of the engineer to stop the train immediately upon discovery of an object on the track the nature of which was unknown, or to take such steps as to have the train under such control that he could stop it without striking the object in the event it happened to be a human being. The jury in this case were authorized to find that the engineer was uncertain as to what was on the track. While he testified that he thought it was a piece of paper, yet he had had to ask the fireman what it was, and the fireman, while he thought it was a piece of paper when viewed from the engineer's window, was uncertain and returned to his own window to obtain a better view. This same factual situation is found also in the *Pelfry* case, supra, where the defendant company was held liable. The reason for this rule is discussed fully in the *Pelfry* case and it would be superfluous to repeat the discussion here in detail, other than to quote the following: "The evidence demanded a finding that the deceased was grossly negligent; but it also authorized a finding, that under all the circumstances, the failure of the engineer to check the speed of his train was, legally speaking, so wanton as to authorize a recovery of some amount. Certain it is that after seeing the object, it was at least the duty .

of the engineer to fasten his vision on the track until he got near enough to distinguish what was on the track. He says he did this, but there were facts and circumstances in the evidence from which the jury could conclude he did not." In brief, a railroad company has no right to gamble with human life, and when uncertain what an object on a track is, it cannot wait until it is too late to discover human peril and then engage in futile attempts to avoid injury. In this case, the engineer did not begin to check the speed of the train immediately upon the discovery of an object on the track, but waited until he was sure that it was a human being and then it was too late to avoid striking him. The jury was authorized to find that the railroad was bound to anticipate the presence of the child, and that it failed to take such steps as were consistent with the exercise of ordinary care to avoid injuring him.

2. Ground 4 of the defendant's motion for a new trial, complaining of the admission of the testimony of a nine-year-old witness, who testified that he had seen the plaintiff's son breathe after he had been struck by the train—on the ground that the witness was not competent by reason of his failure to comprehend the nature of an oath in a court proceeding—is not well taken. Under the facts of this case, we cannot say that the court abused its discretion in passing upon the competency of this nine-year-old witness, who, when questioned by the court, stated that he understood that when he testified in court he was supposed to tell the truth and that he would be punished for not telling the truth. *Gordon* v. *State*, 186 *Ga.* 615 (198 S. E. 678), and cit.

3. Ground 5 of the motion for a new trial complains of the following portion of the court's charge as erroneous, in that it eliminated from the consideration of the jury the questions of negligence involved in the case and in effect directed a verdict for the plaintiff for the value of his son's services during minority: "Gentlemen, I charge you that a father situated as Garnett James was is entitled to recover from a wrongdoer who causes a homicide of his son, the value of the child's services during the period of his minority." Immediately following that portion of the charge the court continued in the same paragraph: "If you find the father is entitled to recover under the rules of law heretofore given you, and you understand, gentlemen, the court expresses

no opinion as to how you should find, it would not be necessary for the father in order to maintain his right to recover to show the child actually rendered valuable services." Fragments of the court's charge are not to be isolated and construed by a reviewing court, but that portion of the charge complained of is to be construed with the charge as a whole and in the context in which it was used. Under those rules of construction, that part of the charge complained of was not erroneous. The charge does nothing more than instruct the jury that, should they, under the rules of law given them, find that the plaintiff was entitled to recover against the defendant, he would be entitled to recover the value of his son's services during minority without the necessity of showing that the son had actually rendered valuable services. The charge does not say that the plaintiff father is entitled to recover against the defendant railroad company, but says that a father is entitled to recover the value of services lost from a wrongdoer. It was still incumbent upon the jury to determine, under the rules of law given them, whether or not the defendant was a wrongdoer such as to render it liable. The charge did not, therefore, eliminate any questions of negligence involved in the case nor direct a verdict for the plaintiff.

4. Ground 6 of the motion for a new trial assigns error on the following portion of the court's charge, upon the grounds that it eliminated from the consideration of the jury the questions of negligence or non-negligence of the defendant, that it in effect charged that, even if the defendant's servants were in the exercise of ordinary care in the operation of the train, the defendant would be liable, since it bound the defendant to anticipate the presence of the plaintiff's son at the crossing instead of binding the defendant to anticipate his presence in the exercise of ordinary care, and that the charge is not a correct statement of the law applicable to the case: "I charge you that, where a private way crosses a track of a railroad company and the crossing is maintained by the company and has for a number of years been in constant and uninterrupted use by the people of the community, a jury may be authorized to find that the servant in charge of the train should anticipate that a person may be on the track at such points. . ." To complete the sentence from which the foregoing quotation was extracted, the court continued: "and

use such precaution to prevent injury to him as would meet the requirements of ordinary care; but the imposition of such a duty on the part of the servants of the railroad company would not relieve the person going on the tracks at the crossing from exercising ordinary care for his own safety." This charge was not error for any reason assigned, and correctly stated the duty owed by the defendant railroad to the plaintiff's son under the facts of this case, and that was the duty to anticipate the presence of the deceased and to take proper precautions to avoid injuring him consistent with the exercise of ordinary care. *Bullard* v. *Southern Ry. Co.*, 116 *Ga.* 644 (43 S. E. 39).

The reference to the path being maintained by the company was not necessary in charging the jury, but under the facts of this case it was not harmful, and it did not authorize the jury to find the fact of the existence of a path from any less amount of evidence than would have been otherwise required. The verdict in this case did not rest upon whether the path was maintained by the company or not.

5. Ground 7 of the motion for a new trial is not meritorious in its complaint of the exclusion of the evidence offered by the conductor of the train with regard to his having observed an electrical storm and thinking it so severe that after the accident he warned bystanders to keep off the rails. The fact of such an admonition by the conductor of the train in no way illustrated the question of whether or not the plaintiff's son had been killed by lightning prior to the time the train ran over his body. If such evidence was intended as indicative of the severity of the electrical storm, it was indicative of the storm's severity at a time when the child was unquestionably dead, and the fact that the conductor feared, after the child's death, that lightning might strike one of the rails and injure one of the bystanders, and that he warned them to keep away from the rails, cannot be said to bear upon the question of whether or not the child met his fate by electrocution. The witness had already been permitted to testify that there was an electrical storm in progress as the train traveled southward toward the scene of the accident; and permitting the conductor to testify as to his admonitions to third persons to stay off the rails after the time of the accident illustrated nothing more than the conductor's own trepidations.

6. Ground 8 of the motion for a new trial complains of the court's failure to give the following request to charge: "In this case if you believe that the railroad engineer and other employees of the railroad company exercised ordinary care in trying to protect the plaintiff's son from injury in looking out for persons upon the track and in doing everything they could to prevent the injury after they discovered plaintiff's son upon the track, then I charge you that the railroad company would not be liable for damage in this case and the plaintiff would not be entitled to recover." This request to charge does not contain a correct statement of the law applicable to the case. Under the facts, the railroad company's servants were under a duty to anticipate the presence of the plaintiff and members of his family on the track at the crossing or in its vicinity and to take proper precautions to avoid injuring them consistent with the exercise of ordinary care. The effect of the request to charge is or would have been to instruct the jury that the duty to exercise ordinary care to avoid injuring persons in the vicinity of the crossing arose only after the presence of such persons was discovered by the defendant's servants. That is not the duty required under the circumstances of this case.

For the foregoing reasons the court did not err in overruling the motion for a new trial.

*Judgment affirmed. Sutton, C. J., and Parker, J., concur.*