33120. CENTRAL OF GEORGIA RAILWAY COMPANY
*v.* SHARPE.

DECIDED NOVEMBER 16, 1950. REHEARING DENIED DECEMBER 14, 1950.

14

*George H. Carswell, Erwin Sibley,* for plaintiff in error.

*S. Gus Jones, J. Millard Jackson,* contra.

WORRILL, J. ■ One of the questions raised by the objections to the allowance of the amendment to the petition, setting up two separate counts, stems from the wording of the amendment striking the original petition in its entirety and substituting in lieu thereof the petition in two counts. It is contended that, after the original petition had been stricken, there was nothing to amend by, and that therefore the trial judge was without jurisdiction to entertain and allow the amendment. Counsel for the plaintiff in error recognize that the plaintiff was attempting to conform to the ruling in *Southeastern Stages* v. *Abdella,* 77 *Ga. App.* 772 (50 S. E. 2d, 85), in this regard, and they contend that that case is distinguishable from the case at bar and should not be followed here. However, counsel in their brief urge the court to overrule that decision if it is found to be indistinguishable from this case. We think that this case is not distinguishable from the *Abdella* case, and is controlled by that decision as to this contention. A careful study of the petition and the amendment reveals clearly that the real effect of the amendment filed by the plaintiff was simply to amend the original petition

16

by the addition of a count two thereto. An examination of the original petition and the amendment shows that exactly the same facts are pleaded in the original petition and in each count of the amendment, and the same relief is prayed for in the amendment as was sought in the original petition. The allegations of the facts are almost exactly the same in count two of the amendment as in the original petition, being in the amendment only a little more full and complete. It thus appears that the plaintiff sought recovery in the original petition and now in each count of the amendment upon exactly the same set of facts. In filing the amendment he seems to have merely changed and made more explicit the legal theory upon which he relies. Thus no new cause of action was set out. No new or additional relief is prayed in the amendment, and for these reasons the trial court did not err in overruling these grounds of objections. *Jeremias* v. *Western Union Telegraph Co.*, 78 *Ga. App.* 142(1a) (50 S. E. 2d, 797). "The original petition constituted enough to amend by. It showed a plaintiff and a defendant, and set out sufficient facts to indicate and specify a particular transaction as a cause of action." *Jeremias* v. *Western Union Telegraph Co.*, supra (p. 143).

■ Count one of the petition as amended is based on and apparently seeks a recovery on the theory that the deceased was a trespasser at the time when and place where he was killed by the defendant's train. To this end the plaintiff alleges that the crossing point whereon the deceased was killed was one frequently used by numerous persons at all hours of the day and night; that it was in a populous locality, actually being within the limits of the Town of Gordon, a city of 1500 people; and that the defendants and their agents knew of these facts and operated the train over the track at that time and place at 70 miles per hour. Further it is alleged that the deceased was in an obviously distressed condition and plainly not in command of his full senses in respect to his situation or able to realize the danger thereof; and that the defendants' agents operating the train saw him and saw his condition, yet sounded no warning nor slackened the speed of the train nor made any effort so to do. And it is alleged that under these circumstances the defendants were guilty of wilful and wanton conduct that directly and proximately resulted in the death of the plaintiff's husband.

Count two as amended is based on and seeks recovery on the theory that the deceased was a licensee, and in addition to the facts alleged in count one, as set out above, alleges that the defendant acquiesced in the continued use of the crossing by the public as alleged by doing certain acts in the way of maintenance of the crossing, and that the defendant's agents in charge of the train were guilty of certain enumerated acts of negligence.

The gist of the defendants' position in this court seems to be that, the deceased being a trespasser on the track at the time and place where he was killed, the defendant owed him only the duty to use ordinary care not to injure him after his presence on the track was actually discovered by them; that the allegations show that the train was traveling at 70 miles per hour just before the deceased was struck and killed; that they also show that the employees of the defendant in charge of the train did not see the deceased until they were within 300 feet of him; and that, such facts being alleged, it follows that less than three seconds elapsed between the time the engineer and fireman first saw the deceased and the instant he was hit, and under such circumstances it was impossible, as a matter of law, for either the engineer or fireman to have done anything effectively toward slowing or stopping the train or toward giving a warning. However, it is of little consequence, under the allegations of the petition in this case, whether the deceased was a licensee or a trespasser at the time and place where he was killed. *Bullard* v. *Southern Ry. Co.*, 116 *Ga.* 644, 646 (43 S. E. 39). The real question is whether, under the facts as alleged in both counts of the petition, there was any duty of care owing the deceased by the defendant that was violated, and whether the violation of such duty was the proximate cause of the death of the deceased. *Vickers* v. *Georgia Power Co.*, 79 *Ga. App.* 456, 458 (54 S. E. 2d, 152).

"Ordinarily a railway engineer is not bound to keep a lookout for a trespasser, and owes him only the duty to use ordinary care not to injure him after his presence in a perilous position has been discovered." *Central of Georgia Ry. Co.* v. *Pelfry*, 11 *Ga. App.* 119(1) (74 S. E. 854). And "Generally the servants of a railway company are not bound to anticipate the presence

of a trespasser upon or about its tracks, and the duty of exercising such care and diligence does not in such case arise until the presence of the trespasser becomes known." *Pope* v. *Seaboard Air-Line Ry.*, 21 *Ga. App.* 251(1b) (94 S. E. 311). See also *Western & Atlantic R.* v. *Meigs*, 74 *Ga.* 857, 866, 867; *Atlanta & Charlotte Air-Line Ry. Co.* v. *Gravitt*, 93 *Ga.* 369(5) (20 S. E. 550). The duty of a railroad toward a trespasser has also been defined as being merely not to injure such trespasser wantonly or wilfully after he has been actually discovered on the tracks. *Pope* v. *Seaboard Air-Line Ry.*, supra; *Tice* v. *Central of Ga. Ry. Co.*, 25 *Ga. App.* 346(1a) (103 S. E. 262); *Hammontree* v. *Southern Ry. Co.*, 45 *Ga. App.* 728(1) (165 S. E. 913); *Luck* v. *Western & Atlantic R.*, 73 *Ga. App.* 197, 204 (36 S. E. 2d, 59). However, as a matter of practical application, it is now well settled that the failure of the operators of a train to exercise ordinary care to avoid injuring one actually found by them to be on the tracks ahead of their train is so much akin to wilfulness and wantonness as to make the company liable for any injury resulting to such person from such conduct. *Central of Ga. Ry.* v. *Pelfry*, supra( headnote 3); *Pope* v. *Seaboard Air-Line Ry.*, supra (1a); *Tice* v. *Central of Georgia Ry. Co.*, supra; *Hammontree* v. *Southern Ry. Co.*, supra. In *Ashworth* v. *Southern Ry. Co.*, 116 *Ga.* 635 (43 S. E. 36, 59 L. R. A. 592), it was held that "The only duty which a railroad company owes in this State to a trespasser upon or about its property is not to injure him wantonly or wilfully; but this rule does not relieve the company, under all circumstances, from anticipating the presence of a trespasser upon its property and from taking proper precautions to prevent injury to him." In *Western & Atlantic R.* v. *Meigs*, supra (on pages 866 and 867), Judge Lumpkin, speaking for the Supreme Court, and in commenting on a request to charge the jury that the railroad company would not be liable for an injury to a trespasser upon its track, unless it was shown that the company's servants in charge of the train were guilty of wanton and malicious acts or were grossly negligent, concluded that "While . . railroad companies do not owe to trespassers the same degree of care and diligence which they are bound to exercise towards their passengers or to the public generally, at crossings and such other places on their right-of-

way as the public has a right to be, still they are liable even to trespassers, for gross negligence, and it would be stating the rule too strongly to confine such negligence, as the charge requested sought to do, to acts of the company's servants amounting to actual wantonness or malice, or a reckless and wilful disregard of human life and safety."

It might be well to note at this point, also, that, in order to hold the railroad liable for wilful and wanton conduct, it must be alleged and shown that the railroad had *actual* knowledge of the presence of the injured person on its tracks. *Western & Atlantic R. Co.* v. *Michael,* 175 *Ga.* 1, 10 (165 S. E. 37); *Hammontree* v. *Southern Ry. Co.,* supra; *Luck* v. *Western & Atlantic R. Co.,* supra. In the *Hammontree* case it was said: "The mere failure of the employees of a railway company to discover the presence of a trespasser at a place where and a time when it was their duty to anticipate the presence of trespassers, and thereafter to take such needful and proper measures for his protection as ordinary care might require, might amount to a lack of ordinary care on the part of the railway company, but would not, in and of itself, amount to wilful and wanton misconduct"; and, "Even where a person on the track is in fact discovered, it is the general rule that a railway company is authorized to act on the presumption that a person apparently of full age and capacity, standing or walking along or near its track, will leave it in time to save himself, unless it should also appear that such trespasser is in an apparently incapacitated or helpless condition, so that he could not reasonably be expected to extricate himself from his peril." In the *Tice* case (25 *Ga. App.* 346(2c)), Judge Jenkins, speaking for this court said: "Whether the facts alleged and proved were sufficient to reasonably indicate to the company that the trespasser was so engrossed or incapacitated at the time and place of the injury as ought to have led the company to infer that he would be unable to protect himself from danger, and thus imposed upon it such a special duty, is generally a question for the jury." These seem to be the rules relative to the duty owing to trespassers generally. However, under the rules laid down by the cases, it makes a difference in the duty and degree of care to be exercised in a particular case where, from the nature of the locality or from a long and con-

tinuous custom of the public to use the defendant's tracks as a pathway either along or across them, it is reasonably to be expected that someone might be on the tracks. In *Pope* v. *Seaboard Air-Line Ry.*, supra (headnote 1c), it was held: "The mere fact that the public may have been accustomed to travel on foot along a certain portion of the right of way belonging to a railway company, and that no measures have been taken to prevent it, does not of itself operate. to constitute the persons so using the track licensees of the company; and, in the absence of the company's permission for such use, such unauthorized custom does not change the relation of one so using the property of the railway company from that of a trespasser. *Southern Ry. Co.* v. *Barfield*, 112 *Ga.* 181, 184 (37 S. E. 386)." To the same effect see *Tice* v. *Central of Ga. Ry. Co.*, supra (headnote 1c); *Hammontree* v. *Southern Ry. Co.*, supra; *Southern Ry. Co.* v. *Hicks*, 61 *Ga. App.* 307, 308 (6 S. E. 2d, 193); *Luck* v. *Western & Atlantic R.*, supra (headnote 1, and at page 202). But the fact of such habit may be a circumstance to put the company on notice that persons might at the particular time and place be upon the track. "Railroad engineers should observe more caution in running at places where they know persons are likely to be on the track than elsewhere, even if those persons are trespassers, and especially is this true when the company has at least tacitly consented to this otherwise unauthorized use of its property by the public." *Western & Atlantic R.* v. *Meigs*, 74 *Ga.* 857, 865 (supra). And this is more especially the rule where the crossing is at a populous locality within an incorporated city. *Bullard* v. *Southern Ry.*, 116 *Ga.* 644(2) (43 S. E. 39). It has been held that "Whether or not the locality, the time, and the circumstances of an injury to one using the right of way, and the known habits and frequency of the public in using it, create such a condition as will charge the servants of the company operating the locomotive and cars with the special duty of looking out for the presence of a trespasser at the time and place of the injury, is generally a question for the jury to determine, in the light of all the evidence introduced." *Pope* v. *Seaboard Air-Line Ry.*, supra (1e); *Tice* v. *Central of Georgia Ry. Co.*, supra (1e); *Shaw* v. *Georgia R.*, 127 *Ga.* 8(1), 11 (55 S. E. 960).

While generally there is no duty to give signals or to slacken speed except at a public crossing, "Where a railroad crossing is in a populous locality and is much used by the public, but the same is not within the limits of an incorporated city or town and is not a part of a public road established pursuant to law, what rate of speed in approaching and running over such crossing would be negligence, and what signals ordinary care would require to be given, are matters to be determined by a jury according to the circumstances of each particular case." *Georgia R. & Bkg. Co.* v. *Cromer,* 106 *Ga.* 296, 298 (31 S. E. 759). And the amount of care to be observed at such a crossing is to some extent dependent upon the frequency of the use. *Central of Georgia Ry. Co.* v. *Pelfry,* supra (headnote 1).

While many of the cases which we have quoted from or cited relate to facts where the custom was to go longitudinally along the track and not to merely cross the tracks at a private crossing, the principle is the same. These rules are based upon the duty which arises in a particular instance to anticipate that, because of the frequency of the use, pedestrians may be upon the tracks at the particular time and place of injury. *Shaw* v. *Georgia R.,* supra.

Although the cases we have reviewed and cited herein are by no means all of the decisions which have dealt with the problem here presented, for the writing on this particular branch of the law is voluminous, nevertheless it is plain from what has been said that both counts of the petition in this case set forth a cause of action. Whether the deceased was a trespasser, licensee, or invitee, he was at a place where the railroad had, under the facts alleged, impliedly invited him to cross the tracks, and at a place where the servants of the company, considering the fact that the locality was a populous one within the limits of an incorporated town, and considering the frequency of the use of the crossing, were under a duty to anticipate that someone might be upon the tracks. Under such circumstances a jury might be authorized to find that operating the train at a speed of 70 miles per hour amounted to a failure to exercise ordinary care for the safety of those who the servants were bound to anticipate might be upon the crossing. Under these circumstances it is immaterial that the servants, under the allegations

of the petition, did not see the deceased until they were just 300 feet from him and that, traveling at 70 miles per hour, they had less than three seconds in which to slow or stop the train or to give the deceased a warning of their approach. On the contrary, such facts are a circumstance which tends to show that the defendant's servants failed to use ordinary care in anticipating that someone might be on the track at that point, and for these reasons the trial judge did not err in overruling the general demurrer.

■ Paragraph 6 of each count of the amended petition was demurred to on the ground that the allegations thereof were irrelevant and conclusions of the plaintiff and not statements of facts. A demurrer, being a critic, itself must be free from criticism. The demurrant fails to point out how or wherein such allegations are conclusions or are irrelevant, and to such an extent the demurrer itself is incomplete and subject to the same criticism which it seeks to level at the petition. For this reason the trial court did not err in overruling these special demurrers. *Southern States Portland Cement Co.* v. *Helms*, 2 *Ga. App.* 308, 314 (53 S. E. 524).

*Judgment affirmed. Sutton, C.J., and Felton, J., concur.*