36839. ELLIS *v.* SOUTHERN RAILWAY COMPANY.

DECIDED OCTOBER 24, 1957—JUDGMENT ADHERED TO ON REHEARING NOVEMBER 18, 1957.

694

*Isaac C. Adams, Adams & McDonald,* for plaintiff in error.

*R. Carter Pittman, Pittman, Kinney & Pope,* contra.

QUILLIAN, J. ■ The plaintiff contends that the trial court erred in excluding the testimony of a witness, J. D. Noble: "The fireman told me that he saw,—well, this is the statement he made: 'I saw the man sitting on the track in the slumped over position,' and he said he just saw the man in a slumped over position and that the man heard the train and turned and looked and it was too late; he made an effort to move. He said he heard the train coming and started to get up—looked."

The objection interposed to the testimony was that it was hearsay. We are of the opinion that the testimony objected to was admissible as a part of res gestae under the holdings in the cases of: *Travelers Ins. Co.* v. *Sheppard,* 85 *Ga.* 751, 755 (12 S. E. 18); *Mitchum* v. *State,* 11 *Ga.* 615 (5); *Alvaton Mercantile Co.* v. *Caldwell,* 34 *Ga. App.* 151, 153 (128 S. E. 781); *American Surety Co.* v. *Smith,* 55 *Ga. App.* 633, 640 (191 S. E. 137).

The testimony of Noble was admitted under Code § 38-302 being in its nature original evidence rather than mere hearsay. "It is true this testimony is hearsay, but for the purpose of identifying location, or time, or as explanatory of conduct, hearsay is admissible." *Stamps* v. *Newton County,* 8 *Ga. App.* 229, 235 (68 S. E. 947); *McBurney* v. *Richardson,* 93 *Ga. App.* 138, 141 (91 S. E. 2d 123). The testimony objected to was evidence of material physical facts such as the posture of the deceased as the train approached and came upon him. It also served to explain the conduct of the engineer and fireman in charge of the engine on the occasion under investigation, being illustrative

of the issues as to whether the speed of the train, the failure to ring the bell, to have the train under proper control and to exercise ordinary care to anticipate the presence of the deceased at the locus of the collision was the proximate cause of his death. *Central of Ga. Ry. Co.* v. *Dabney*, 44 *Ga. App.* 143 (4) (160 S. E. 818); *Seaboard Air-Line Ry. Co.* v. *Benton*, 43 *Ga. App.* 495 (159 S. E. 717); *Cohen* v. *Parish*, 105 *Ga.* 339 (3) (31 S. E. 205); *Clayton* v. *Tucker*, 20 *Ga.* 452 (2).

■ The defendant contends the verdict directed was demanded because the evidence adduced by the plaintiff was lacking in several elements of proof essential to evince the truth of the allegations of the petition and establish the right of recovery, and for the further reason that the evidence submitted on the trial of the case showed without material conflict that its servants in charge of the engine on the occasion under investigation were not negligent in any of the particulars alleged in the petition. If either position is correct the trial judge properly directed the verdict.

■ Treating the contentions referred to in the preceding division in reverse order from that stated, we will consider the question as to whether the plaintiff's evidence was prima facie proof of the acts of negligence charged, and whether the defendant's evidence vindicated its trainmen of failing to exercise the degree of care required of them. Let us first state the rules by which the conclusion of both questions must be arrived at.

The rule is ancient and well founded that the duty owed a trespasser is not to wilfully inflict injury upon him after his presence becomes known, or should in the exercise of ordinary prudence be known to the defendant upon whose premises he comes. *Pope* v. *Seaboard Airline Ry.*, 21 *Ga. App.* 251 (94 S. E. 311); *Chattanooga Railway &c. Co.* v. *Wallace*, 23 *Ga. App.* 554 (99 S. E. 57). Compatible with this rule is another; that where railroad employees in charge of an engine know that the general public is accustomed to cross the railroad tracks and are under the duty to anticipate the presence of people there, they must exercise ordinary care to avoid injury to pedestrians who pass over the tracks at the customary place. *Wise* v. *Atlanta & West Point R. Co.*, 16 *Ga. App.* 372 (1) (6 S. E. 2d 135); *Western & Atlantic R.* v. *Michael*, 44 *Ga. App.* 503 (162

S. E. 294); *Southern Ry. Co.* v. *Tudor,* 46 *Ga. App.* 563 (7, 10, 13) (168 S. E. 98).

The latter rule rests on the principle that knowledge of the presence of persons at such usual place of crossing is imputable to the trainmen, because they being aware that people generally may be expected at such point of passing is tantamount to knowing that they are there at a given time when the train approaches.

In this case the engineer testified that he permitted the engine to round the curve about one hundred feet from the pathway upon which he was, under the holding on the former appearance of the case here, under the duty to anticipate the presence of members of the public including the deceased, at a speed of thirty to thirty-five miles per hour, though he was at the time aware that he could not, by use of the equipment at his disposal and at the speed the train was traveling, or even at the much less speed of ten miles per hour, bring the engine to a stop short of the pathway so as to avoid injury to persons passing across the tracks. *Wilson* v. *Pollard,* 62 *Ga. App.* 781, 785 (10 S. E. 2d 407). In *Central of Ga. Ry. Co.* v. *Sharpe,* 83 *Ga. App.* 12, 21 (62 S. E. 2d 427) this court held: "Although the cases we have reviewed and cited herein are by no means all of the decisions which have dealt with the problem here presented, for the writing on this particular branch of the law is voluminous, nevertheless it is plain from what has been said that both counts of the petition in this case set forth a cause of action. Whether the deceased was a trespasser, licensee, or invitee, he was at a place where the railroad had, under the facts alleged, impliedly invited him to cross the tracks, and at a place where the servants of the company, considering the fact that the locality was a populous one within the limits of an incorporated town, and considering the frequency of the use of the crossing, were under a duty to anticipate that someone might be upon the tracks. Under such circumstances a jury might be authorized to find that operating the train at a speed of 70 miles per hour amounted to a failure to exercise ordinary care for the safety of those who the servants were bound to anticipate might be upon the crossing. Under these circumstances it is immaterial that the servants, under the allegations of the petition, did not see the deceased until they were just 300 feet from him and that, traveling at 70 miles per

hour, they had less than three seconds in which to slow or stop the train or to give the deceased a warning of their approach. On the contrary, such facts are a circumstance which tends to show that the defendant's servants failed to use ordinary care in anticipating that someone might be on the track at that point, and for these reasons the trial judge did not err in' overruling the general demurrer."

This admission of the engineer, without more, authorized a finding that he did not exercise ordinary prudence in the operation of the engine, and as held under similar circumstances in *Georgia Southern & Fla. Ry. Co.* v. *Wilson,* 93 *Ga. App.* 94, 111 (91 S. E. 2d 71) was sufficient evidence of negligence on his part. Here it must be observed that one who operates a locomotive engine or drives a motor vehicle at such speed that he cannot bring the same to a stop within the distance dictated by the voice of ordinary care does not have immediate or proper control of the conveyance whatever be its nature. *Brewer* v. *James,* 76 *Ga. App.* 447, 452 (46 S. E. 2d 267). The engineer testified that upon approaching a crossing some 300 yards distant from the place where the deceased was killed he sounded the horn of the locomotive. He did not profess to remember whether he rang the engine's bell or even whether it was equipped with a bell. A plaintiff's witness seated in an automobile at a point between the crossing at which the engineer stated the horn was sounded and the pathway where the plaintiff contends the deceased was killed, stated that he did not hear the engine's horn blow or its bell ring and that he could have heard either signal had it been given. The engineer's testimony on this issue was positive, the plaintiff's witness negative. The rule is well established that a jury may accept and believe negative evidence in preference to positive. *Climer* v. *Southern Ry. Co.,* 43 *Ga. App.* 650 (159 S. E. 782); *Callaway* v. *Cox,* 74 *Ga. App.* 555 (1b) (40 S. E. 2d 578). While the words "positive evidence" were used in the opinion its pronouncement of the law was sound. We are aware and have considered the facts that the plaintiff's witness admitted that he was engaged in conversation with another officer in which his interest might have been engrossed. But the witness still protested that, had the horn sounded or the bell rung, he would have heard the same. The weight and probative

value of his testimony should have been left to the jury. In *Ellis* v. *Southern Ry. Co.*, 89 *Ga. App.* 407, 415 (79 S. E. 2d 541), it was held: "The evidence in this respect showed among other things that a person who was only a few hundred feet away from the scene of the homicide did not hear the ringing of any bell or the blowing of any whistle until after the train struck Mr. Ellis. This would be some evidence that the bell was not being rung, and the evidence was otherwise such as to make a jury issue as to whether the circumstances required it to be rung in the exercise of ordinary care in the operation of the train." *Georgia Southern & Fla. Ry. Co.* v. *Wilson*, 93 *Ga. App.* 94, 112, supra.

The evidence as a whole showed that the defendant's servant in charge of its engine failed to exercise ordinary care in the particulars discussed, which were alleged in the petition as some of the acts of negligence on which the plaintiff's right of recovery was predicated.

The defendant contends that the plaintiff offered no proof of the allegation that the deceased was sitting on the railroad track when the train approached. In making this contention it was, of course, assumed that the testimony of Noble was properly excluded. In the first division of this opinion we have held that Noble's testimony was erroneously excluded, and hence it must be considered in passing on the sufficiency of the plaintiff's proof. *Richardson* v. *Milikin*, 204 *Ga.* 885 (3) (52 S. E. 2d 451). According to the version of the fireman as related by Noble the deceased was sitting on the tracks and, as the train approached, attempted to arise. This was in direct conflict with the testimony of the engineer that the deceased was lying on the roadbed with his head on one of the rails. In determining whether the evidence supported the theory that the deceased suffered a mental lapse or physical collapse so that he could not have been held to have assumed a sitting or reclining position on the tracks, it is as pointed out on the previous appearance of the case not important whether the deceased was sitting or lying on the roadbed. But as will presently appear from the discussion of another phase of the evidence the deceased's posture when struck by the train was of some consequence. The evidence being in conflict made an issue for the jury as to whether the deceased was

reclining or sitting on the tracks as the train, approached and came upon him.

■ We next consider the question as to whether the plaintiff's evidence entirely failed to prima facie prove the allegation that the deceased was on the pathway when the engine struck him. On the former appearance of the case we decided that the evidence adduced by the plaintiff, substantially the same as upon the trial we now review, was sufficient to prove prima facie every material allegation of the petition. *Ellis* v. *Southern Ry. Co.*, 89 *Ga. App.* 407, supra. The defendant insists that the presence of the deceased on the pathway as alleged was a material averment. It is obvious that the previous decision is the law of the case as to this issue. But if this was not true another case on facts similar and in principle identical with the case at bar has been decided. *Georgia Southern & Fla. Ry. Co.* v. *Wilson*, 93 *Ga. App.* 94, supra.

The defendant contends that the testimony of one of its witnesses who visited the scene on the night of the tragedy was conclusive evidence that the deceased was struck by the engine beyond the pathway in the direction the train was traveling and not upon the pathway as alleged in the petition. The witness testified that he saw the body about 47 feet beyond the pathway and at a point about five feet closer he observed signs of blood on one of the rails. We think that the evidence is no more indicative that the locus of the collision was where the signs of blood were discovered than at the crossing. That the impact of the engine propelled the deceased on the engine and carried him 47 feet is no more improbable, than as held in the *Wilson* case under similar circumstances that the train there traveling at 45 to 50 miles per hour would carry or knock the deceased the distance of 25 or 30 steps. The stain or sign of blood at a point on the rail between the pathway and the place where the body lay was not at all conclusive that the deceased was at that place when struck by the engine. The momentum of the engine would more probably than not have swept him from the actual point of contact too quickly for his blood to have been spilled there. Of course, it was a question for the jury as to what weight would be given to the circumstances mentioned, and as to which they ponderated.

Distinguished counsel for the defendant calls attention to the fact that on the former appearance of the case it was held that the plaintiff's proof was aided by the presumption arising under Code § 94-1108 and invokes the rule that when the railroad company introduces evidence that its employees were not negligent in the operation of the train the presumption disappears. The rule is only applicable when the defendant's testimony shows that the trainmen were not guilty of any of the acts of negligence alleged in the petition and relied on by the plaintiff as the basis of recovery. *Georgia Southern & Fla. Ry. Co.* v. *Wilson*, 93 *Ga. App.* 94, supra; *Atlantic Coast Line R. Co.* v. *Thomas*, 83 *Ga. App.* 477, 483 (64 S. E. 2d 301). The testimony of the engineer tended to support rather than disprove that under the circumstances related by him he operated the train at a speed greater than he should have in the exercise of ordinary care. This was one of the acts of negligence alleged in the petition. This is true though the speed testified to by him was not as high as that alleged in the petition.

There were issues of fact that should have been submitted to the jury, hence the trial court erred in directing the verdict.

*Judgment reversed. Nichols, J., concurs. Felton, C. J., concurs specially.*

### ON MOTION TO REHEAR.

QUILLIAN, J. The majority opinion in this case holds that it was reversible error for the trial court to exclude the testimony of the witness J. D. Noble as to what the fireman of the train crew told him with reference to the position on the railroad of the deceased, just prior to the train hitting him, for two reasons: First: It was a part of the res gestae. Secondly: It was a declaration made dum fervet opus and admissible to explain the conduct of the train crew, including that of the engineer.

While it is true that the witness Noble was not at the exact spot on the railroad track when the tragedy occurred, he was however, in close proximity thereto, and as contradistinguished from the cases of *Weinkle & Sons* v. *Brunswick & Western R. Co.*, 107 *Ga.* 367 (33 S. E. 471) and *Henderson* v. *State*, 210 *Ga.* 680, 683 (82 S. E. 2d 638), cited by counsel for the plaintiff in error as authority for excluding the testimony as not part of the res gestae, he arrived on the scene within three to five minutes

after the deceased was struck by the train and while the conductor and fireman were in the process of making an investigation to determine what exactly had happened. Such time had not elapsed when Noble arrived on the scene for the fireman to have fully realized the consequences resulting to the company for the killing of the deceased, nor as to render the occurrence which was the subject of the conversation a completed and remote transaction of the past. The statement made by the fireman was not such declaration accompanying the act of killing the deceased as to render it a simultaneous exclamation; it was nevertheless sufficiently close in point of time as to make it a part of the res gestae, and as such admissible in evidence in this case.

The statement of the fireman: "I saw the man sitting on the track in the slumped over position and the man heard the train and turned and looked and it was too late; he made an effort to move, he heard the train coming and started to get up—looked." While this statement is clearly hearsay it was nevertheless admissible to show location of the deceased upon the track prior to the fatal injury of the deceased. This evidence was also sufficient, as was held when this case was here before, to authorize the inference that the deceased had suffered some kind of physical or mental collapse in assuming such posture on the track as described by the fireman. This evidence also "served to explain the conduct of the engineer and fireman who were in charge of the engine on the occasion under investigation, being illustrative of the issues as to whether the speed of the train, the failure to ring the bell, to have the train under proper control and to exercise ordinary care to anticipate the presence of the deceased at the locus of the collision was the proximate cause of his death."

Perhaps it is well to observe that the very elements of proof that bring the testimony of Noble within the res gestae rule are absent in the case of *Weinkle & Sons* v. *Brunswick & Western R. Co.*, 107 *Ga.* 367, supra. In the case at bar the conversation occurred within three to five minutes after the deceased was killed and while an investigation was being conducted by the witness, a policeman. In the *Weinkle & Sons* case (pp. 370, 371), it is said: "Unless the declarations of the engineer were made while he was engaged in the transaction of some business

of the company with the person with whom he was talking within the scope of his authority, or were declarations accompanying an act done by him in discharge of some duty imposed upon him in his relation as a servant of the company, the evidence was inadmissible and should have been rejected. It is not pretended that the statements made by the engineer were made in the course of any transaction with the witness in relation to the company's business, and therefore such statements do not come within the reason of that rule which permits the declarations of an agent to be introduced against his principal when they are made dum fervet opus. Were the statements of the engineer a part of the res gestae of the occurrence so as to make them admissible for that reason? It does not distinctly appear in the record what was the lapse of time between the killing of the mules and the conversation between the engineer and the witness; but from what does appear it must have been such a lapse of time as that the declarations were not, in any sense, contemporaneous with the act of killing the mules. The witness was not present at the time that the collision occurred, and it is to be inferred from what is stated in the motion for a new trial that when the witness arrived upon the scene such time had elapsed that the engineer was in a position to fully realize the consequences resulting to the company from the killing of the mules, and that therefore the occurrence which was the subject of the conversation was in the past."

In *Kemp* v. *Central of Ga. Ry. Co.*, 122 *Ga.* 559 (50 S. E. 465) the record does not disclose that the self-serving statement of the engineer, which a witness undertook to repeat, was made near the time of the occurrence to which the engineer's statement referred, that it was made during an investigation or under any circumstances that would bring it within any exception to the hearsay rule. The case is not authority for anything contrary to the rule laid down in the original opinion.

Moreover, the ruling made on the previous appearance of this case that there was sufficient competent evidence in the record to take the case to the jury was an adjudication that the statement made by the defendant's fireman, testified to by J. D. Noble, was of probative value. Had the testimony as to his statement been hearsay and not admissible under any exception to the

hearsay rule it would have had no probative value, even when admitted without objection. The ruling then made reversing the trial court's grant of a nonsuit is conclusive that the statement made by the fireman and sworn to by Noble was not mere hearsay evidence. The former ruling is the law of this case.

*Judgment adhered to on rehearing. Nichols, J., concurs. Felton, C. J., concurs specially.*

FELTON, C. J., concurring specially. ■ I think the court erred in ruling that the testimony of J. D. Noble as to what the fireman told the witness that he saw was admissible in evidence, the question dealt with in division one of the opinion. The court seems to have based its ruling on the fact that the statement was part of the res gestae and also on the theory that it was hearsay but admissible to explain conduct and ascertain motive, etc. Under the first theory the testimony was properly excluded under *Weinkle & Sons* v. *Brunswick & Western R. Co.*, 107 *Ga.* 367 (33 S. E. 471), and *Kemp* v. *Central of Ga. Ry. Co.*, 122 *Ga.* 559 (50 S. E. 465). The testimony was not admissible under the second theory because the statement by the fireman did not explain the conduct or illustrate the motive of the engineer under the facts of this case, as it is not shown that the fireman communicated what he saw to the engineer. See *Henderson* v. *State*, 210 *Ga.* 680, 683 (82 S. E. 2d 638). The evidence was not admissible to show the *substantive fact* that the deceased was sitting on the tracks with his head in his hands. *Hix-Green Co.* v. *Dowis*, 79 *Ga. App.* 412 (53 S. E. 2d 601).

■ On the former appeal of this case this court held that, "The evidence in this case tended to show and would have authorized the jury to find that the plaintiff's husband suffered some mental or physical collapse which caused him to sit or lie upon the defendant's tracks." On the trial treated in that decision there was no objection to the testimony as to what the fireman said, dealt with above, or if objected to on the trial the objection was waived by a failure to file a cross-bill of exceptions. So, considering the above holding, even if the testimony of J. D. Noble was inadmissible, there would still be a jury issue whether the deceased's negligence in lying on the track precludes a recovery.

■ I do not think that the fact that this court assumed that the testimony of J. D. Noble was admissible in view of the fact

that no objection to it was presented to us made it the law of the case that the evidence was admissible. I do not think that the principle of the "law of the case" goes that far, especially since the evidence involved is not indisputably hearsay as is shown by the ruling of the majority in this case. Of course, if this court had ruled expressly that the evidence was not hearsay, we could not now change that ruling.

I think that under our ruling in the former consideration of this case the court erred in directing a verdict for the railroad but I think the court properly excluded the testimony of J. D. Noble as to what the fireman stated to him.