48439, 48440, 48441. HOGAN et al. v. LOUISVILLE &
NASHVILLE RAILROAD COMPANY et al. (three cases).

PANNELL, Judge. These three companion suits are predicated on
a car-train collision which occurred about 10:49 a.m. on May 26,
1966, at the Panola Road crossing of the main line of the Georgia
Railroad in DeKalb County, Georgia, which resulted in the death
of the plaintiff's daughter, personal injury to the plain-
tiff-mother, and property damage. Just prior to the in-
cident, Mrs. Hogan had been driving her husband's car south
on the Stone Mountain-Lithonia road which generally parallels
the railroad track for some distance. Her aunt, Mrs. Bush, was
partially reclined on the right rear seat with her head resting
on a pillow. Mrs. Hogan's infant daughter was on the right front
seat. Approaching the crossing she made a right turn onto
Panola Road. The crossing had four signs, the customary railroad
crossing sign or "crossbucks," an octagonal, red "stop sign," a
circular, black and yellow railroad warning sign and, a tall
"crossbucks" labeled "Georgia Law/Stop/Unsafe RR Crossing."
All signs were on posts and visible from the roadway. Mrs. Hogan
either stopped momentarily about 15 feet from the tracks, or else
came to a virtual halt. Mrs. Bush testified that she saw Mrs.
Hogan look right and left before she proceeded to drive forward
into the path of a work-extra (unscheduled) train consisting of
a locomotive and five cars. The headlights of the train were
illuminated. The fireman called out a warning and the engineer
immediately applied the emergency brakes, but due to the close
proximity of the locomotive to the crossing, it struck the right
front door of the car, which was pushed ahead of the locomotive
for a distance estimated at from about 1,700 to about 2,640 feet
before coming to rest. The train's speed was estimated to be 40
to 45 m.p.h., as it entered the intersection. Mrs. Hogan's three
and one-half year old daughter died shortly after the train

stopped; both women suffered serious injuries and were hospitalized. The car was demolished. Mrs. Hogan has no recollection of events either immediately preceding or following the collision. The weather was clear at the time. Graphic evidence depicts no obstructions to visibility of an approaching train for about 1,200 feet up the track.

Drastic disagreement exists between witnesses called by the opposing parties as to whether the train whistle sounded prior to the collision. Mrs. Bush heard no whistle. Mrs. Brenda Coile, a friend of Mrs. Bush, testified that she lived several hundred feet from the crossing, was talking on the phone and, felt the vibrations of an approaching train, leading her to advise her telephonic correspondent that when the whistle started she would have to hang up as she couldn't hear. She kept on talking until she heard the crash and, therefore, was certain that the whistle hadn't sounded. Mrs. Lillie Jeffares, another friend of Mrs. Bush, who also lived several hundred feet from the crossing, had been doing housework and had lain down across her bed to rest, but was not asleep. She heard no train whistle, but was aroused by the sound of the collision. Contra, the four train crew members maintained the whistle was activated at the blow post and that the bell also was started. Mr. L. V. Jones, sitting in the office of a horse farm, about 1,000 feet from the crossing, heard the train's whistle blow for the crossing when it was between a half and three-quarters of a mile away and heard it continue until the train had passed the farm. He did not hear the noise of the crash. Mr. Charles Danzwith was driving a large 10-speed truck following Mrs. Hogan south on the road. He was pacing the train about abreast of the last car. He heard no whistle or bell, but doubted that he would have, as the windows of the truck's cab were up and the truck was in a gear which rendered the interior of the cab quite noisy.

The jury returned verdicts in favor of the defendants in all three cases. *Held:*

1. Plaintiffs complain that the trial court erred in treating three notices to produce as discovery motions and referring same to the motions' calendar, rather than ruling on them at the commencement of trial. These cases were filed on May 24, 1968. Following the filing of numerous interrogatories, motions, other pleadings and hearings, the case was scheduled for hearing on December 11, 1972. At the trial, with prospective jurors present, the trial judge discovered that the plaintiffs had filed notices to

produce a few days earlier. Attorneys for the parties both indicated a desire to go to trial. The trial court then stated: "If there is no insistence on either the motion to produce or the motion to quash at this time, the court will proceed." There was none, and plaintiffs are considered to have abandoned their right to pursue the matter on appeal. They cannot now urge it as grounds for reversal.

2. Plaintiffs enumerate that the trial court's refusal to permit a showing that effective automobile warning and safety devices were readily available in the industry at reasonable costs and that state and federal funds were available to assist in defraying costs, was error. Assuming, but not deciding, that this was error, there was no prejudice to the plaintiffs. The trial court charged the jury, in part: "[I]f you should determine that in the exercise of ordinary care some particular additional warning should have been given by the defendant railroads, such as electric flashing lights or signal bells at the crossing, a watchman at the crossing or lowered crossing gates at the crossing, and so forth, and such additional warning was not given at the time and place in question, then the failure to give such warning would authorize a jury to find such defendant to be negligent." Thus, the issue of negligence respecting the adequacy of the warning devices was presented to the jury irrespective of cost.

3. Plaintiffs complain that the trial court erred in admitting photographs and plats into evidence which showed signs with the legend *"Georgia Law—Stop—Unsafe RR Crossing"* in view of Georgia Code Section 95-1808, which provides, inter alia, that "[T]he charging, reading or discussing of this law within the hearing of a jury in the trial of a case arising from injuries sustained or suffered at or near a railroad crossing, shall constitute reversible error." Suffice it to say, the law was not charged, read or discussed within hearing of the jury. The pictures graphically illustrated to the jury the warning devices facing Mrs. Hogan at the time of the incident and were a valid aid to their fact finding duties. The enumeration is without merit.

4. Plaintiff complains (Enumeration of error no. 13) that the trial court erred in denying their right to show that the defendants evaluated the Panola Road crossing as their second most hazardous crossing and in need of substantial upgrading. In support of their contention, plaintiffs unsuccessfully offered plaintiffs' exhibit no. 6. Defendants denied that such a

categorization could be given to the list. The record of trial furnished this court on appeal, in lieu of the disputed exhibit, contains the following typewritten notation by the court reporter: "List of Georgia Railroad Crossings (Unable to obtain from Counsel.)" We cannot consider questions with respect to an offered exhibit which is not included in a properly authenticated record. See *Palmer v. Stevens,* 115 Ga. App. 398 (8) (154 SE2d 803); *Berry v. State,* 123 Ga. App. 616 (1) (182 SE2d 166).

5. Plaintiffs complain that the trial court erred in charging the jury with respect to the weight to be given negative testimony. The instructions complained of were taken from this court's opinion in *Pollard v. Todd,* 62 Ga. App. 251, 259 (8 SE2d 566). Therein it was held that negative testimony concerning a train's whistle or bell cannot overcome positive testimony that such sounded unless accompanied by proof that the witness either: (1) listened for a signal; (2) had his attention in some way directed to it; or, (3) probably would have heard it if it had been activated. See also, *Callaway v. Cox,* 74 Ga. App. 555, 558 (40 SE2d 578); *Ellis v. Southern R. Co.,* 96 Ga. App. 687, 697 (101 SE2d 230). In the case *sub judice,* the testimony of plaintiffs' witnesses clearly met one or more of the tests enunciated in *Pollard v. Todd,* 62 Ga. App. 251, 259, supra; and the jury was free to accept their testimony in preference to positive testimony had they so desired. The enumeration is without merit.

6. Other enumerations of error not herein specifically dealt with are without merit.

*Judgments affirmed. Eberhardt, P. J., and Stolz, J., concur.*

ARGUED SEPTEMBER 4, 1973 — DECIDED JANUARY 7, 1974 — REHEARING DENIED JANUARY 25, 1974 —

*Kilpatrick, Cody, Rogers, McClatchey & Regenstein, R. Lawrence Ashe, Jr., Dennis S. Meir,* for appellants.

*Webb, Parker, Young & Ferguson, Robert G. Young,* for appellees.